J-S29039-12

2014 PA Super 213

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT HOUCK | |
| Appellant | No. 2709 EDA 2011 |

Appeal from the Judgment of Sentence July 28, 2011
In the Court of Common Pleas of Pike County
Criminal Division at No(s): CP-52-CR-0000282-2010

BEFORE:  GANTMAN, J., FITZGERALD, J. * and PLATT, J.**

OPINION BY GANTMAN, J.:                 **FILED SEPTEMBER 26, 2014**

Appellant, Robert Houck, appeals from the judgment of sentence entered in the Pike County Court of Common Pleas, following his jury trial conviction for driving under the influence ("DUI").[1]  We affirm.

The trial court opinion set forth the relevant facts of this case as follows:

> On March 21, 2010[,] Trooper Ives was on patrol working from three p.m. to eleven p.m.  Trooper Ives was traveling on Roemersville Road in Greentown, Pike County, when he came behind a large Ford pickup truck.  Traveling behind the truck for approximately two miles, Trooper Ives observed the vehicle weaving across the lane of travel

_____

[1] 75 Pa.C.S.A. § 3802(b).  To the extent the certified record indicates Appellant's conviction was for 75 Pa.C.S.A. § 3802(c), that is error and must be corrected.

_____

* Former Justice specially assigned to the Superior Court.
** Retired Senior Judge assigned to the Superior Court.

crossing the double yellow line and onto the fog line for some distance before Trooper Ives activated his lights.

Trooper Ives identified Appellant as the person driving the vehicle. He then approached the vehicle and after initiating a conversation with Appellant detected an odor of an alcoholic beverage emanating from Appellant's breath. Appellant indicated that he had [drunk] two beers. Trooper Ives transported Appellant, in custody, back to the Pennsylvania State Police barracks.

Trooper Ives stopped Appellant at 20:32 and began to transport Appellant back to the barracks at 21:19. At the barracks, Trooper Ives read Appellant his Implied Consent Warnings, after which Appellant agreed to give a breath sample.

Appellant blew into the Data Master DMT which is approved in the Commonwealth for purposes of performing blood alcohol concentration tests. Prior to administering the test, Trooper Ives observed [Appellant] for twenty minutes to determine that he had not vomited or smoked or consumed alcohol.

Trooper Ives also was required to run a blank test with Appellant in an adjacent room. Between the two rooms is a two way mirror so Appellant could be observed, and Appellant was no more than five to ten feet from Trooper Ives. Given the arrangement of the rooms, Trooper Ives admitted that he could not observe Appellant while Trooper Ives was running the blank test. However, when entering the room, Trooper Ives did not see any indications that Appellant drank an alcoholic beverage or had smoked or vomited. The test was reported on the machine as 20:34. Trooper Ives determined the time stamp on the machine was incorrect and left a note for his supervisor. Trooper Ives noted that the correct time of the test was 21:34.

There were two samples of Appellant's breath taken that night: the first registered a 0.170 per cent; the second registered a 0.171 per cent. As Trooper Ives is required by law to take the lower sample, the final result of Appellant's breath test was a 0.170 per cent.

Trooper Kevin Varco, is the Maintenance Officer for the Data Master DMT. He testified regarding the various calibrations that must be done to maintain the machine's accuracy. The machine was tested for accuracy on March 21, 2010, the day Appellant's breath was tested. He also explained that the machine's time was incorrect due to a failure in adjusting it to daylight saving's time.

At the beginning of [Appellant's] case in chief, James Gifford testified that the condition of Roemersville Road is rated as the worst it could be. The road is in deplorable condition with pot holes. He also testified that people drive over the center lines in order to avoid the hazards on the road. However, he could not testify as to how the road's condition related to Appellant's blood alcohol concentration.

Trooper Ives was recalled for rebuttal and testified that he took into account the road's condition when he decided to pull Appellant's vehicle over. Trooper Ives observed areas of the road that Appellant could have safely kept his vehicle in the lane of traffic and there were several areas that the road was in good condition in which Appellant did not have to cross the center lines in order to drive safely. With that both sides rested.

(Trial Court Opinion, dated December 5, 2011, at 1-4). We add the following from the certified record. The Commonwealth charged Appellant with one count of DUI under 75 Pa.C.S.A. § 3802(c) and two summary traffic offenses. Appellant filed a motion to suppress the traffic stop for lack of reasonable suspicion/probable cause, which the court denied after a hearing. The case proceeded to a jury trial on Count 1, Section 3802(c) DUI; the parties agreed the court would adjudicate the summary offenses.

At the close of the trial, the court instructed the jury to first determine if Appellant had driven his vehicle and, within two hours of driving, Appellant

had a blood alcohol content in excess of 0.08%. If the jury answered "yes" to that inquiry, the court instructed the jury to select the highest BAC range that the Commonwealth had proven beyond a reasonable doubt: 0.08% to 0.09%; 0.10% to 0.159%; or 0.16% and above. The verdict slip contained identical instructions. Significantly, Appellant did not object to the jury charge or to the verdict slip. On May 18, 2011, the jury found Appellant guilty of DUI of 0.08% or higher and selected a BAC range of 0.10% to 0.159%. Appellant did not object to that verdict when entered. The court also found Appellant guilty of the summary offenses of careless driving and driving on roadways laned for traffic.

Over two months later, Appellant filed a motion for extraordinary relief at sentencing on July 28, 2011. Appellant asserted the Commonwealth had charged him with only one count of DUI (BAC in excess of 0.16%) under Section 3802(c). According to Appellant, the jury's chosen BAC range of 0.10% and 0.159% meant that the jury had actually acquitted Appellant of Section 3802(c) as charged. Based on the jury's factual finding of a BAC range lower than charged, Appellant asked the court to enter a verdict of "not guilty" on the only charge in the information. (**See** Motion for Extraordinary Relief, filed 7/28/11, at 1-2.) The court denied the motion. The court then sentenced Appellant to thirty (30) days to six (6) months' imprisonment, plus fines and costs covering the DUI and summary convictions. The court's sentence was consistent with a sentence for a

Section 3802(b) DUI conviction. The court continued Appellant's bail pending an appeal, provided an appeal was timely filed. Appellant timely filed a post-sentence motion on August 4, 2011, asserting essentially the same challenge to his DUI conviction and sentence. Following a hearing on the post-sentence motion, on September 6, 2011, the court denied the motion.[2] Appellant timely filed a notice of appeal on October 5, 2011. On October 11, 2011, the court ordered Appellant to file a concise statement of errors complained on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on November 1, 2011.

Appellant raises three issues for our review:

> DID THE TRIAL COURT [ERR] WHEN IT REFUSED TO ENTER A VERDICT OF NOT GUILTY AS IT EFFECTIVELY DID NOT ACCEPT THE JURY'S FINDING OF FACT THAT APPELLANT DID NOT HAVE A BLOOD ALCOHOL CONTENT OF 0.160% OR HIGHER, A NECESSARY ELEMENT OF COUNT I?
>
> DID THE TRIAL COURT COMMIT ERROR WHEN IT ENTERED A VERDICT NOT SUPPORTED BY SUFFICIENT EVIDENCE IN LIGHT OF THE JURY'S FINDING OF FACT?
>
> DID THE TRIAL COURT COMMIT ERROR IN HOLDING THAT PROBABLE CAUSE EXISTED TO TAKE APPELLANT INTO CUSTODY, SUBJECT HIM TO A BREATH TEST AND SUBSEQUENTLY ADMITTING THE BREATH TEST AFTER THE EVIDENCE SHOWED THE SAME TO BE UNRELIABLE?

(Appellant's Brief at 7).

_____

[2] Appellant requested and included in the certified record only the trial transcript; he did not request or include transcripts from the suppression, sentencing, or post-sentence motion hearings.

In issues one and two, Appellant argues the Commonwealth charged him with only one count of DUI, under Section 3802(c), which requires proof beyond a reasonable doubt that, within two hours of driving, Appellant had a BAC of 0.16% or higher. Appellant claims the criminal information did not list a charge under Section 3802(b), where the BAC is between 0.10% and 0.159%. Appellant avers the jury's finding of a BAC of 0.10% to 0.159% was inconsistent with a conviction under Section 3802(c), which requires a BAC of 0.16% or higher. Appellant complains the Commonwealth did not move to amend the information to include the lower BAC levels. Appellant asserts the jury's finding of a BAC in the range of 0.10% to 0.159% precludes a conviction under Section 3802(c) as a matter of law, because the jury effectively convicted Appellant of Section 3802(b) DUI, an offense not charged. Appellant contends the jury's factual finding of a BAC of 0.10% to 0.159% meant that the court was obligated to enter a "not guilty" verdict on the only charge in the information. Appellant rejects any notion that the guilty verdict on Section 3802(b) DUI was permissible as a conviction of a "lesser-included offense." Appellant relies on **Commonwealth v. Jackson**, 82 Pa. D. & C.4th 225 (Crawford County 2007) to suggest that a Section 3802(b) offense cannot be a lesser-included offense of a Section 3802(c) offense because they are "mutually exclusive." Appellant likewise rejects the court's conclusion that his conviction was simply the result of an inconsistent or compromise verdict, because Appellant was charged with

only one offense.

Appellant further maintains the jury specifically determined the evidence did not prove one of the necessary elements of Section 3802(c) as charged, *i.e.*, a BAC of 0.16% or higher. Appellant states: "The jury concluded that the evidence of a BAC of 0.160% or higher was 'so weak and inconclusive' that it found a BAC…between 0.10% and 0.159%." (Appellant's Brief at 14). Appellant submits the jury found the evidence was insufficient to support an element of the crime charged. For these reasons, Appellant concludes his conviction is at odds with the crime charged; and the court should have set aside the verdict. We disagree.

When examining the sufficiency of evidence:

> The standard we apply…is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Barnswell Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

The Crimes Code defines the relevant offense of DUI as follows:

**§ 3802.  Driving under influence of alcohol or controlled substance**

**(a)  General impairment.—**

(1)  An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

(2)  An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

**(b)  High rate of alcohol.—**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

**(c)  Highest rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two

> hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802.

Established Pennsylvania law states a defendant can be convicted of a crime that was not actually charged when the uncharged offense is a lesser-included offense of the charged crime. *See Commonwealth v. Sims*, 591 Pa. 506, 919 A.2d 931 (2007) (citing *Commonwealth v. Carter*, 482 Pa. 274, 393 A.2d 660 (1978)). "As long as the conviction is for a lesser-included offense, the defendant will have been put on notice of the charges against him and can adequately prepare a defense." *Commonwealth v. Reese*, 725 A.2d 190, 191 (Pa.Super. 1999), *appeal denied*, 559 Pa. 716, 740 A.2d 1146 (1999). At the heart of this issue is whether the defendant had fair notice and an opportunity to present an adequate defense. *Commonwealth v. Pemberth*, 489 A.2d 235, 237 (Pa.Super. 1985). "This end has frequently been achieved in one of two ways: either the Commonwealth will give an accused express notice by charging him with the less culpable offense or it will give him implicit notice through the information where the proven, but uncharged crime is a lesser-included offense of the charged, but unproven, offense." *Id.*

There are "three varying approaches" to determine what constitutes a lesser-included offense: the statutory-elements approach, the cognate-pleadings approach, and the evidentiary approach. *Sims, supra* at 517,

919 A.2d at 938. The Supreme Court summarized these approaches as follows:

> The statutory-elements approach began at common law and is used in the federal courts and in various state courts. Under this approach, the trial court is required to identify the elements of both the greater charge and the lesser charge and determine whether it is possible to commit the greater offense without committing the lesser offense. If it is not possible, then the lesser offense is considered a lesser-included offense of the greater crime.
>
> Pursuant to the cognate-pleading approach, there is no requirement that the greater offense encompass all of the elements of the lesser offense. Rather, it is sufficient that the two offenses have certain elements in common. The focus of this approach is on the pleadings as the trial court must determine whether the allegations in the pleadings charging the greater offense include allegations of all of the elements of the lesser offense. If so, the lesser charge is considered a lesser-included offense of the greater charge. As this approach centers on the pleadings of the case, notice and due process violations are not generally grave concerns.
>
> Finally, the evidentiary approach looks to the actual evidence established at trial to assess the relationship between the greater and lesser charges. The lesser offense may have elements that are distinct from the greater offense and still be considered a lesser-included offense, as long as the evidence presented at trial to prove the greater offense actually establishes the elements of the lesser offense. Generally, courts adopting this approach require that the same underlying conduct establish the elements of both offenses.

*Sims, supra* at 517-518, 919 A.2d at 938. *Sims* held the defendant could be convicted of an "attempt" crime, although the Commonwealth had charged the defendant only with the completed offense, because the attempt crime was a cognate offense of the completed crime. *Id.* at 524, 919 A.2d

- 10 -

at 942. ***Sims*** represents the proposition that a jury can convict a defendant of an **uncharged** lesser-included offense but not of an uncharged greater offense. ***Id. See, e.g., Commonwealth v. Haight***, 50 A.3d 137 (Pa.Super. 2012) (affirming conviction for uncharged Section 3802(b) as cognate offense of charged Section 3802(c), where defense strategy called into question accuracy of blood test results; defense strategy led to conviction under Section 3802(b)); ***Commonwealth v. Sinclair***, 897 A.2d 1218, 1222 (Pa.Super. 2006) (ensuring consistency in case law to declare Section 3802(b) as cognate offense of Section 3802(c), where case arose from same facts already known to defendant and offenses involved same basic elements).

Additionally, the trial court is required to instruct the jury as to the applicable law of the case. ***Commonwealth v. Washington***, 549 Pa. 12, 700 A.2d 400 (1997), *cert. denied*, 524 U.S. 955, 118 S.Ct. 2375, 141 L.Ed.2d 742 (1998). A jury charge on a lesser-included offense is permissible so long as it does not offend the evidence presented, *i.e.*, there is **some disputed evidence concerning an element of the greater charge** or the undisputed evidence is capable of more than one rational inference. ***Commonwealth v. Hawkins***, 614 A.2d 1198, 1203 (Pa.Super. 1992) (*en banc*). If a rational jury, given the record evidence, can find the defendant guilty of the lesser-included offense, the court should instruct the jury on the law of the lesser-included offense. ***Commonwealth v. Ferrari***,

- 11 -

593 A.2d 846, 848 (Pa.Super. 1991), *appeal denied*, 533 Pa. 607, 618 A.2d 398 (1992). **See also Commonwealth v. Phillips**, 946 A.2d 103, 110 (Pa.Super. 2008), *appeal denied*, 600 Pa. 745, 964 A.2d 895 (2009), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (reiterating jury charge on lesser-included offense should be given if record evidence would reasonably support verdict on lesser offense).

Moreover, the failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue. **See Commonwealth v. Shamsud-Din**, 995 A.2d 1224, 1226 (Pa.Super. 2010) (reiterating failure to object to jury instruction constitutes waiver of error in charge); **Commonwealth v. duPont**, 730 A.2d 970, 984-85 (Pa.Super. 1999), *appeal denied*, 561 Pa. 669, 749 A.2d 466 (2000), *cert. denied*, 530 U.S. 1231, 120 S.Ct. 2663, 147 L.Ed.2d 276 (2000) (stating failure to object to particular verdict sheet constitutes waiver of its use).

Well-settled Pennsylvania law permits inconsistent verdicts, provided sufficient evidence supports the conviction. **Commonwealth v. Miller**, 613 Pa. 584, 35 A.3d 1206 (2012); **Commonwealth v. King**, 990 A.2d 1172, 1178 (Pa.Super. 2010), *appeal denied*, 617 Pa. 624, 53 A.3d 50 (2012); **Commonwealth v. Trill**, 543 A.2d 1106, 1111 (Pa.Super. 1988), *appeal denied*, 522 Pa. 603, 562 A.2d 826 (1989). "[I]nconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis

for reversal." ***Commonwealth v. Rose***, 960 A.2d 149, 158 (Pa.Super. 2008), *appeal denied*, 602 Pa. 657, 980 A.2d 110 (2009) (citation omitted). "An acquittal cannot be interpreted as a specific finding in relation to some of the evidence." ***Miller, supra*** at 596, 35 A.3d at 1213.

Instantly, the Commonwealth charged Appellant with one count of DUI under Section 3802(c), plus related summary offenses, and presented evidence that Appellant's Breathalyzer results indicated a BAC of 0.17% within two hours of the traffic stop. At trial, the defense disputed the BAC level by challenging the accuracy of the testing machine because it had not been adjusted for daylight savings time. Counsel sought to characterize the time calibration as suggestive of a malfunction of the testing equipment to call into question the BAC measurement. The court's unopposed jury instructions allowed the jury to decide if the Commonwealth had proved Appellant was DUI and, if so, to select from one of three separate BAC ranges according to the evidence presented at trial. The jury found Appellant guilty of DUI with a BAC between 0.10% and 0.159%, a range consistent with Section 3802(b). Appellant did not object to the verdict when entered.

In response to Appellant's issues one and two challenging the validity of his conviction, the trial court reasoned as follows:

> Pursuant to 75 Pa.C.S.A. § 3802(c), an individual may not drive, operate, or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol concentration in the individual's blood or breath

is 0.16 per cent or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle. Appellant argues in essence that this [c]ourt erred in not concluding that the jury acquitted Appellant of the charge of driving under the influence—highest rate in determining that Appellant's BAC was below 0.160 per cent. However, this [c]ourt finds the verdict to be similar to an inconsistent or compromise verdict and not a basis for reversal.

\* \* \*

Viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, the jury was justified in concluding that Appellant operated a vehicle after imbibing a sufficient amount of alcohol that the alcohol concentration in his breath was not less than 0.10 per cent and not more than 0.159 per cent. Trooper Ives testified that he followed Appellant's vehicle before initiating the stop and subsequently administered the breath test in accordance with the laws of the Commonwealth. The test result was a 0.170 per cent concentration. This is more than sufficient to allow the jury to determine the elements of the above offense beyond a reasonable doubt.

Given the cross-examination by Appellant's trial counsel, this [c]ourt recognizes that apparently the jury may not have felt comfortable with the complete accuracy of the test or the manner in which it was administered, however, it is for the jury to decide as the finder of fact and assessor of credibility whom to believe and how to weigh the evidence.

Further, the jury was given choices on the verdict for establishing Appellant's blood alcohol concentration. The fact that the jury chose a BAC below 0.16 per cent despite the claim in the criminal information that this BAC was over 0.16 per cent represents a decision of the jury based upon the fact[s] presented. The jury was free to weigh the evidence and conclude for itself what the evidence proved and what they were satisfied was proven by that evidence. Inconsistent verdicts or compromise verdicts are not a basis for reversal.

- 14 -

(Trial Court Opinion at 5-7) (internal citations omitted). Here, the Commonwealth charged Appellant with one count of DUI under Section 3802(c). Usually, inconsistent verdicts involve multiple counts. **See Rose, supra** at 157-58 (reiterating general principle that inconsistent verdict occurs when findings of fact with respect to one charge are seemingly incompatible with findings of fact on separate charge). Although the outcome of the trial was not technically an "inconsistent" verdict as we generally understand that term, we do agree with the court's ultimate conclusion that Appellant's conviction should be affirmed.

In general, Section 3802(c) forbids an individual to drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle. **See** 75 Pa.C.S.A. § 3802(c). As the relevant statute makes clear, Section 3802(c) includes all of the elements of Section 3802(b), notwithstanding the ranges provided in the two sections, because a BAC of 0.16% necessarily subsumes all lesser BAC ranges as set forth in Section 3802(b) and Section 3802(a)(2). In other words, an individual with a BAC of 0.16% or above will unavoidably have a BAC of at least 0.08% to 0.159%. Applying the three methods of **Sims, supra**, under the statutory elements approach to lesser-included offenses, it is not possible to commit a

Section 3802(c) offense without committing a Section 3802(b) offense. Under the cognate pleading approach to lesser-included offenses, an allegation of Section 3802(c) includes the elements of Section 3802(b). Finally, under the evidentiary approach to lesser-included offenses, we look to the actual evidence established at trial to assess the relationship between the greater charge and the lesser offense. Although the lesser offense of Section 3208(b) may call for a BAC range lower than the range in the greater offense of Section 3802(c), Section 3802(b) can still be considered a lesser-included offense, because the evidence at trial to prove the Section 3802(c) offense established the elements of the Section 3802(b) offense. Consistent with courts adopting this approach, here the same underlying conduct established the elements of both offenses. *See Sims, supra*. The jury was therefore free to convict Appellant under Section 3802(b), even where the Commonwealth charged only Section 3802(c), as the record evidence at trial reasonably supported a verdict on the lesser offense of Section 3802(b). *See Haight, supra*.

Furthermore, Appellant's reliance on the *Jackson* case from Crawford County is misplaced for the following reasons. In *Jackson*, the defendant was charged with DUI at Sections 3802(a)(1) and 3802(c), based on a blood serum test result of 0.30%. The defendant asked for a jury instruction on Section 3802(a)(2) and Section 3802(b) as lesser-included offenses, which the court denied. Without any analysis, the court concluded the offenses

described in Sections 3802(a)(2), 3802(b), and 3802(c) were "mutually exclusive." Further, the court said the defendant had not properly contradicted the Commonwealth's evidence, where the defendant relied on a chart "lifted from the Pennsylvania Liquor Control Board website without the cautionary disclaimers appearing elsewhere on the website. It is clearly not scientific evidence." *Jackson, supra* at 229-30.

On appeal, the defendant asked this Court to determine "whether the evidence presented could be viewed as supporting a conviction of a lower BAC level such that it was error for the trial court to refuse, upon request, to charge the jury with the lesser included BAC levels." The defendant presented his issue in terms of a requested and denied jury instruction. This Court said:

> Appellant argues that, given his body weight and eyewitness testimony as to the amount of alcohol he consumed during the course of the evening in question, the jury could have concluded that his BAC was low enough to be convicted under § 3802(a)(2) or (b).
>
> Appellant testified that he was unsure how much he had to drink on the night in question, though it was probably six or seven beers. The Commonwealth's expert testified that not all people metabolize alcohol at the same rate, depending upon how often they drink. Also, the visible effects of intoxication at a given BAC can vary from person to person. Appellant introduced a chart created by the Pennsylvania Liquor Control Board indicating that an individual of Appellant's approximate weight who consumed six or seven beers would have a BAC of less than 0.16%.
>
> In light of Appellant's vague testimony as to how much he drank, and in light of the Commonwealth's expert's

testimony summarized above, we do not believe the record contained any basis upon which a jury may find a precise BAC for Appellant other than the one offered by the Commonwealth. Sections 3802(a)(2) and (b) depend upon precise measurements of a defendant's BAC. A conviction under either of those two provisions would have been based on conjecture. **On the facts presented in this case**, the jury could convict Appellant under § 3802(c) or not at all.

***Commonwealth v. Jackson***, No. 1342 WDA 2007, unpublished memorandum at 3-4 (Pa.Super. filed on December 9, 2008) (emphasis added). This Court concluded the defendant was not entitled to a jury instruction based on speculation. Both the trial court and this Court recognized that the defendant in ***Jackson*** had not properly contradicted the Commonwealth's evidence, so a jury charge on Sections 3802(a)(2) and 3802(b) would have offended the evidence presented at trial; and no rational jury could have found the defendant guilty of a lesser offense than the one charged.[3] ***See Washington, supra***; ***Phillips, supra***; ***Hawkins, supra***; ***Ferrari, supra***. Under the circumstances of the present case, ***Jackson*** is neither persuasive nor dispositive.

_____

[3] To the extent the ***Jackson*** trial court and this Court on appeal suggested Sections 3802(a)(2) and 3802(b) were not lesser-included offenses of Section 3802(c), those decisions have no precedential value. ***See Commonwealth v. Phinn***, 761 A.2d 176, 179 (Pa.Super. 2000), *appeal denied*, 567 Pa. 712, 785 A.2d 89 (2001) (reiterating rule that published decisions of Courts of Common Pleas and unpublished memorandum decisions of this Court lack precedential value beyond law of case as to parties directly involved).

Additionally, our Supreme Court recently held: "[T]he failure to forward a contemporaneous objection to the court's verdict cannot be excused by resort to an 'illegal sentence' doctrine. Of course, every criminal defense claim on direct appeal, if successful, will result in some effect upon the 'sentence,' since it is the judgment of sentence that is the appealable order. But, that does not convert all claims into sentencing claims, much less into claims that a sentence was 'illegal.' For example, a sufficiency of the evidence claim, if successful, will result in a vacatur of sentence and outright acquittal; but, the Court has never held that such claims are non-waivable merely because of the relief involved." *Commonwealth v. Spruill*, ___ Pa. ___, ___, 80 A.3d 453, 461-62 (2013). Here, Appellant did not make a contemporaneous objection to the jury instruction, the verdict sheet, or the verdict. Under *Spruill*, Appellant arguably waived for purposes of this appeal his claim of error respecting the verdict. *See id.* As a result, we conclude Appellant is not entitled to relief on his first or second issues.

In his third and last issue, Appellant argues Trooper Ives executed an illegal vehicle stop. Notwithstanding Appellant's issue as presented that the police lacked probable cause to arrest Appellant (*see* Appellant's Brief at 7), Appellant states the real issue here is whether reasonable suspicion actually existed to support the stop. (*See id.* at 15.) Appellant concedes the best evidence of his driving on the night in question is the dash cam tape of Trooper Ives following Appellant over a period of just less than 4 minutes,

when Appellant crossed the centerline four (4) times, rode the centerline (12) times and crossed the fog line two (2) times. Nevertheless, Appellant claims this evidence is not determinative of the issue. Notably, avers Appellant, when Trooper Ives conversed with Appellant on the tape, the trooper suggested Appellant's driving was "a little much," in response to Appellant's protest that his maneuvers were due to the condition of the road. Appellant contends the tape would lead one to agree with Trooper Ives, if one could ignore the readily apparent poor condition of the road. To highlight the condition of the road, Appellant called Skip Gifford to testify at trial. Mr. Gifford is a 36-year veteran of the Department of Transportation and a nearly 50-year resident of the area immediately served by Roemersville Road described the road as "deplorable." According to Appellant, he was forced to cross both the center and the fog lines due to potholes and ragged edges in the road. Appellant characterizes his actions as ordinary driving maneuvers necessitated by poor road conditions. Given the road conditions, Appellant insists he was not violating the Motor Vehicle Code, and Trooper Ives lacked justification for the traffic stop. Appellant concludes the court erred in refusing to suppress all evidence which flowed from the illegal traffic stop. We cannot agree.

Appellate review of the denial of a suppression motion involves the following principles:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to

determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted). Further, "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013) (quoting *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa.Super. 2006)).

Section 6308 of the Motor Vehicle Code provides:

**§ 6308.  Investigation by police officers**

\*   \*   \*

**(b)   Authority of police officer.—**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has **reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

\*   \*   \*

75 Pa.C.S.A. 6308(b) (emphasis added). "If the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop−if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion." ***Commonwealth v. Chase***, 599 Pa. 80, 92, 960 A.2d 108, 115 (2008). "Indeed, the language of [Section] 6308 reflects this very intent. Stops based on reasonable suspicion are allowed for a stated investigatory purpose: 'to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.' 75 Pa.C.S. § 6308(b). This is conceptually equivalent to the purpose of a ***Terry***[4]stop. It does not allow all stops to be based on the lower quantum—it merely allows this for investigatory stops, consistent with the requirements of both federal and state constitutions. We interpret the legislature's modification of [Section] 6308 as merely eliminating the statutory requirement of a greater level of information for a stop under the Vehicle Code than is constitutionally required for all other stops. As such, it is not unconstitutional." ***Id.*** at 94-95, 960 A.2d at 116.

"To establish grounds for 'reasonable suspicion'…the officer must articulate specific observations which, in conjunction with reasonable

---

[4] ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." ***Commonwealth v. Fulton***, 921 A.2d 1239, 1243 (Pa.Super. 2007), *appeal denied*, 594 Pa. 686, 934 A.2d 72 (2007) (quoting ***Commonwealth v. Little***, 903 A.2d 1269, 1272 (Pa.Super. 2006)).

> [T]o determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight…to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Fulton, supra*** at 1243 (quoting ***Commonwealth v. Hughes***, 908 A.2d 924, 927 (Pa.Super. 2006)) (internal citations and quotation marks omitted). If an objective view of the facts indicates an officer had specific, articulable facts to support the investigative stop, the law deems the stop reasonable. ***Chase, supra*** at 92, 960 A.2d at 114.

Additionally, well-settled Pennsylvania law makes clear "an appellate court is limited to considering only the materials in the certified record when resolving an issue." ***Commonwealth v. Preston***, 904 A.2d 1, 6 (Pa.Super. 2006) (*en banc*), *appeal denied*, 591 Pa. 663, 916 A.2d 632 (2007). Where the appellant has not made the transcript of the proceedings at issue a part of the certified record, we have said:

> With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. Pa.R.A.P.1911(a). … When the appellant…fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review.

*Id.* at 7.

> Of course, if a party is indigent, and is entitled to taxpayer—provided transcripts or portions of the record, he will not be assessed costs. But, that does not absolve the appellant and his lawyer of his obligation to identify and order that which he deems necessary to prosecute his appeal. The plain terms of the Rules contemplate that the parties, who are in the best position to know what they actually need for appeal, are responsible to take affirmative actions to secure transcripts and other parts of the record. … [Appellant] cannot fault the trial court for his own failures. Instead, it is only when an appellant can show that a request was made and erroneously denied, which is not the case herein, that such a claim would have merit. … And that sort of claim ripens, and should be pursued upon, the very appeal that supposedly was impeded by a missing portion of the record….

*Commonwealth v. Lesko*, 609 Pa. 128, 237-38, 15 A.3d 345, 410 (2011).

If the defendant is appealing the denial of a suppression motion and fails to have the suppression hearing transcript made part of the appellate record, we can take such action as we deem appropriate, including dismissal of the issue. *Commonwealth v. Dennis*, 618 A.2d 972 (Pa.Super. 1992), *appeal denied*, 535 Pa. 654, 634 A.2d 218 (1993).

Instantly, Appellant filed a notice of appeal on October 5, 2011, purporting to challenge the "Order of Court entered on the 6th day of

September, 2011, denying his Post-Trial/Post-Sentencing Motion as well as the Sentence pronounced on July 28, 2011, and the denial of his Motion for Extraordinary Relief and the entry of the verdict on the 18th of May, 2011, and the denial of his Pre-Trial Motion." (**See** Notice of Appeal, filed 10/5/11.) In the same document, Appellant requested only "the Transcript of the Trial held in the above captioned case which occurred on May 18, 2011…." (**See id.**) Consistent with this request, the trial transcript is the only transcript in the certified record. Thus, Appellant's argument concerning suppression error based on the legality of the stop is arguably waived.

Nevertheless, the trial court issued contemporaneous findings, based on the motion to suppress and the hearing, in relevant part as follows:

> The defendant claims the police lacked reasonable suspicion to stop the defendant's vehicle and therefore the stop and subsequent investigative detention of the defendant was improper and all evidence derived therefrom should be suppressed. The critical piece of evidence admitted in this matter is a video tape taken from the dashboard of the police vehicle which depicts the observations made by the police officer prior to the initial stop. The applicable period of time relevant to these proceedings occurs on the video disc between one minute and 17 seconds and four minutes and 56 seconds representing the period of time the arresting officer was behind the defendant in close proximity to observe the defendant driving prior to the point where the arresting officer actually activated his emergency lights to pull the defendant over. Between the times of one minute 17 seconds and four minutes 56 seconds, a time comprised of approximately 3¾ minutes, the defendant crossed over the centerline with the driver's side vehicle tire on the yellow

line at least 12 times and crossed over the fog line with the passenger tires at least twice.

The road in question is a two lane road with double yellow centerline and white fog line. The road is paved but appears to have been repaired on multiple occasions and, as a result, appears to be only in fair condition. In addition, the road has several moderate curves to the left and right. Some of the defendant's deviations out of his lane of traffic occur on these curves.

The question then becomes whether or not approximately 18 moderate lane violations within a period of 3¾ minutes constitutes a reasonable basis for a police officer to pull over the defendant. On review of the video tape, this [c]ourt concludes that the defendant's operation of the motor vehicle that evening clearly justifies the officer's reaction in pulling over the defendant. Certainly, the driver's actions were not isolated events of crossing the centerline or fog line not can the multiple lane deviations simply be blamed upon the condition of the road. Based upon the observations of the police officer, this [c]ourt concludes that the officer had a reasonable suspicion to stop the vehicle and therefore the evidence obtained as a result of the stop should not be suppressed.

(Order Denying Appellant's Suppression Motion, filed January 4, 2011, at 1-2). Appellant does not dispute these facts; he objects only to the conclusion drawn from the facts. The court observed that Trooper Ives followed Appellant's vehicle for approximately four minutes before initiating a traffic stop. During that time, Trooper Ives watched Appellant cross the centerline four times, drive on the centerline twelve times, and cross the fog line twice. The police vehicle contained a video camera that recorded the entirety of Trooper Ives' observations, and the trial court reviewed that video before denying Appellant's motion to suppress. We accept the court's conclusion.

This Court has consistently rejected challenges to traffic stops in cases where police observed a driver operate his vehicle in an erratic manner by veering over the center and fog lines. **See Fulton, supra** at 1243 (holding reasonable suspicion of violation of Motor Vehicle Code existed when police saw vehicle swerve out of lane of travel three times in 30 seconds); **Commonwealth v. Cook**, 865 A.2d 869, 874 (Pa.Super. 2004), *appeal denied*, 584 Pa. 672, 880 A.2d 1236 (2005) (concluding officer had reasonable suspicion for traffic stop where vehicle drifted over fog line three times and then jerked back into lane of travel). Appellant's argument on this issue attempts to re-litigate the court's determinations. Appellant's efforts do not disprove the fact that his manner of driving gave Trooper Ives reasonable suspicion for the traffic stop. Consequently, we conclude the court correctly denied Appellant's motion to suppress.

Based on the foregoing, we hold Section 3802(b) of the DUI statute was a lesser-included offense of Section 3802(c), given the facts established at trial. Further, the trial court properly denied Appellant's motion to suppress. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*JUDGE PLATT JOINS THIS OPINION.

**JUSTICE FITZGERALD FILES A DISSENTING OPINION.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/26/2014</u>