J-S57003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAQUINN TYSHAY MITCHELL | : | |
| | : | |
| Appellant | : | No. 287 MDA 2019 |

Appeal from the Judgment of Sentence Entered January 15, 2019
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0003338-2016

BEFORE: BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: **FILED JANUARY 29, 2020**

LaQuinn Tyshay Mitchell appeals from her January 15, 2019 judgment of sentence of sixty days of incarceration and fines, which was imposed after she was convicted of unlawful possession of marijuana, possession of drug paraphernalia, and driving while under license suspension--DUI-related. We affirm.

The trial court summarized the facts as follows:

On June 6, 2016, at approximately 1:00 pm, Detective John Friel of the West Shore Regional Police Department was driving his marked patrol vehicle in the Borough of Lemoyne, Cumberland County. He was on patrol in full uniform when he noticed a vehicle owned by June Latese Lowery parked on a side street next to her residence with the engine running. Ms. Lowery was an individual that Detective Friel knew, from past interactions, had a suspended driver's license. Detective Friel drove past the vehicle and observed Ms. Lowery in the driver's seat while the vehicle's engine was running.

Upon observing Ms. Lowery in the driver's seat of her automobile, Detective Friel performed a U-turn so that he could

get behind the subject vehicle. [During the U-turn, Detective Friel lost sight of the vehicle for "less than ten seconds."] (N.T., 11/6/18[1], at 16). Upon completing his turn, Detective Friel observed that the vehicle was being driven down the street, and he performed a traffic stop once he caught up to it. Once the vehicle was stopped, Detective Friel observed that Ms. Lowery was in the passenger seat of the automobile, and that the vehicle was being driven by an individual later identified as the Appellant. At the time of the stop, Appellant provided a false name and date of birth to Detective Friel. After a failed attempt to locate Appellant in the police database using the false information provided to him, Detective Friel gave Appellant a final opportunity to correctly identify herself. Appellant did so, and upon running her information through the police database, Detective Friel learned that Appellant had a suspended driver's license, as well as an active arrest warrant from York County.

Pursuant to the active warrant, Appellant was taken into custody. At the time her handbag was searched, incident to arrest [and with the oral consent of Appellant], which revealed, among other items, marijuana and a grinder. (N.T., 11/6/18, at 13). This discovery led to the drug-related charges[,] which were filed against Appellant.

Trial Court Opinion, 4/3/19, at 2.

Appellant presents two issues for our review:

I. Did the trial court err in denying omnibus pre-trial motion/motion to suppress wherein police detained and questioned Appellant during a traffic stop, had elicited inculpatory statements and illegally seized evidence?

II. Was the evidence sufficient to have convicted Appellant of unlawful possession of small amount of marijuana, unlawful possession of drug paraphernalia, and driving under suspension, DUI-related?

Appellant's brief at 6 (unnecessary capitalization omitted).

_____

[1] Although the trial took place on November 6, 2018, the cover page of the official Transcript of Proceedings incorrectly identifies the date as November 6, 2019. We refer to the correct date.

Appellant's first issue is a challenge to the trial court's denial of her suppression motion. In reviewing such a claim, we are

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

***Commonwealth v. Jones***, 121 A.3d 524, 526 (Pa.Super. 2015) (quoting

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (internal citations

and quotation marks omitted)).

Appellant contends that Detective John Friel lacked reasonable suspicion to detain the vehicle she was driving and question her. The following principles inform our analysis of this issue. There are three categories of interactions between citizens and police:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Ellis***, 662 A.2d 1043, 1047 (Pa. 1995). We conduct an

objective examination of the totality of the circumstances in determining the

level of the interaction. ***Commonwealth v. Strickler***, 757 A.2d 884, 889 (Pa. 2000).

A police officer has authority to stop a vehicle when he has reasonable suspicion that a violation of the Motor Vehicle Code ("MVC") is occurring or has occurred. ***Commonwealth v. Farnan***, 55 A.3d 113, 116 (Pa.Super. 2012). In ***Commonwealth v. Houck***, 102 A.3d 443 (Pa.Super. 2014), this Court explained, "[t]o establish grounds for "reasonable suspicion" . . . the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." ***Id***. at 456.

Also implicated herein is the legality of an officer requesting identifying information from an individual during an investigative traffic stop. As this Court reaffirmed in ***Commonwealth v. Reed,*** 19 A.3d 1163, 1166 (Pa.Super. 2011), Pennsylvania law does not recognize an expectation of privacy in an individual's identifying information. Therefore, an officer's request for such information alone does not implicate Fourth Amendment protections. Moreover, the MVC authorizes police officers with reasonable suspicion of a violation to stop a vehicle and request an operator's license or other relevant information. ***See*** 75 Pa.C.S. § 6308(b) (authorizing police officer with reasonable suspicion of a MVC violation to stop vehicle and check license of operator or other information).

Appellant contends first that the trial court erred in denying her motion to suppress because Detective Friel lacked reasonable suspicion to effectuate the investigative stop and detention. She argues that, given the totality of the circumstances the detective observed, his belief that Ms. Lowery was driving the car with a suspended license did not warrant the stop. Appellant's brief at 17. Alternatively, Appellant posits that the reasonable suspicion of Detective Friel only validated an investigative stop of Ms. Lowery, not Appellant, as he had no reasonable belief that Appellant was committing a motor vehicle violation. *Id*. at 23.

In support of her position, Appellant argues that the United States Constitution and *Houck*, *supra*, place restrictions on a police officer's reasonable suspicion and establish a strong policy favoring protection of an individual's Fourth Amendment rights to be free from unreasonable searches and seizures. *See* Appellant's brief, at 16-24. Appellant asserts that, because Detective Friel's reasonable suspicion was based on Ms. Lowery driving the vehicle, the detective lacked a valid basis for an investigative stop of Appellant as opposed to Ms. Lowery. Hence, she maintains that the seizure was illegal and unconstitutional. *Id*. at 23.

Furthermore, Appellant claims that, upon stopping the vehicle and then discovering that Ms. Lowery was not the driver, there was no longer "reasonable suspicion that a violation of [the MVC] is occurring or has occurred." *Id.* Appellant asserts that once Detective Friel observed that Ms.

Lowery was not operating the vehicle, he lacked the authority to subject Appellant to an investigative stop since he had no reasonable suspicion that she was illegally operating the vehicle. *Id*.

Appellant contends further that Detective Friel's act of asking for her identification following the stop was either a new, separate, and baseless investigation of Appellant, or an impermissible and illegal continuation of the original investigative stop. *Id*. at 29. Both arguments rest on Appellant's assumption that when Detective Friel's reasonable suspicion of a MVC violation was dispelled, the stop became illegal. *Id*. at 24. Appellant arrives at this conclusion by meshing **Commonwealth v. Stevenson**, 832 A.2d 1123, 1130 (Pa.Super. 2003), establishing that an officer should utilize the "least intrusive means reasonably available" and only continue an investigative stop for as long as is necessary to effectuate the purpose of the stop and to dispel the officer's reasonable suspicion, with our Supreme Court's holding in **Commonwealth v. Lyles**, 97 A.3d 298 (Pa. 2014), that an officer may only request identification during a mere encounter so long as the officer does not suggest that compliance is required. Wielding these precedents, Appellant argues that the continuation of the stop by asking for her name was illegal. Appellant's brief at 28.

Finally, Appellant asserts that Detective Friel only had a hunch as opposed to reasonable suspicion that she was in violation of the MVC. *Id*. Based on this court's rule in **Commonwealth v. Morrison**, 166 A.3d 357

(Pa.Super. 2017), Appellant declares that subjecting her to an investigative detention and asking for her name was improper as Detective Friel's reasonable suspicion was not particularized to her. In short, Appellant contends that she was subjected to an investigative detention without reasonable suspicion, and that the evidence obtained should have been suppressed.

The suppression court found that the stop was a valid investigative detention for a MVC violation[2] as Detective Friel possessed the requisite reasonable suspicion for the stop. Such a finding is supported by Detective Friel's testimony that he initially observed Ms. Lowery behind the wheel of her vehicle, which was stopped with the engine running. Seconds later, he saw the vehicle being operated on the roadway. He testified that he had personal knowledge that Ms. Lowery's operator's license was suspended at the time. Although the stop was based on a mistake of fact, *i.e.*, that Ms. Lowery was operating the vehicle, the suppression court found that the mistake was objectively reasonable, and thus, the stop was constitutional. Trial Court

_____

[2] The suppression court actually determined that Detective Friel had probable cause to stop Ms. Lowery's vehicle. As we held in **Commonwealth v. Enick**, 70 A.3d 843 (Pa.Super. 2013), where a vehicle is stopped based upon an observed traffic offense that does not require further investigation, the Commonwealth must establish that the police officer had probable cause to believe that the traffic offense was committed. Appellant did not challenge the suppression court's finding of probable cause, but focused on whether there was reasonable suspicion for the stop and successive police conduct, which is a less arduous standard.

Opinion, 4/3/19, at 5 n.1 (citing **Commonwealth v. Chase**, 960 A.2d 108, 120 (Pa. 2008) (holding that an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place)). Based on the foregoing, the suppression court concluded that Detective Friel possessed the requisite reasonable suspicion for an investigative stop, and we find no error in that conclusion.

The focus herein is on the events after the stop. Appellant contends that the request for her identification was overly-intrusive, and that continuing the stop for that purpose constituted an illegal search and seizure. The suppression court disagreed, concluding that, once the stop occurred, "Detective Friel was properly permitted to inquire as to the identity of the driver." Trial Court Opinion, 4/3/18, at 5.

We find no error in the trial court's reasoning. As this Court held in **Commonwealth v. Campbell**, 862 A.2d 659, 644 (Pa.Super. 2004), an officer's request for identifying information during a valid traffic stop is not an invasive practice, even when the request is directed to a passenger. The purpose of the stop was to put an end to a suspected ongoing violation of the MVC by ensuring that the vehicle was not being operated by an individual who was not legally authorized to drive.

Appellant faults Detective Friel for failing to terminate the detention immediately after he established that Ms. Lowery was not driving the vehicle.

However, Appellant cites no authority in support of her contention that asking a driver for identifying information after a stop justified by reasonable suspicion, even though the suspicion is dispelled, is unlawfully prolonging the detention. Detective Friel testified that he was obtaining identification information for purposes of his report, and that "[a]nytime police interact with individuals, we obtain their information." N.T., 11/6/18, at 10. Appellant was initially uncooperative with the detective's request. When she complied, she had difficulty spelling her name and providing her birthdate for the detective. Detective Friel found no individual with the name and birthdate Appellant provided when he accessed the system, further arousing his suspicion regarding Appellant. When confronted, Appellant availed herself of the Detective's invitation to provide her real name and birthdate, and Detective Friel ascertained that her license was suspended and that there was an outstanding warrant for her arrest. As we held in **Commonwealth v. Jackson**, 122 A.3d 448 (Pa.Super. 2015), nervousness and supplying false information to a police officer may provide the requisite reasonable suspicion to detain an individual further.

On the record before us, we find no error in the suppression court's conclusion that the investigative detention was lawful, that asking Appellant for identification was permissible, and that Appellant's conduct gave rise to reasonable suspicion that justified prolonging the stop for further investigation. When Appellant was placed under arrest, she requested that

Detective Friel retrieve her handbag, thus subjecting the handbag to a valid search incident to arrest.[3] The handbag contained marijuana and drug paraphernalia. N.T., 11/6/18, at 13-14. Accordingly, we find that the suppression court's factual findings were supported by the record, its legal conclusions were free of error, and we affirm its denial of Appellant's motion to suppress.

Appellant also claims that the evidence was insufficient to support her conviction of possession of marijuana, possession of drug paraphernalia, and driving under suspension – DUI-related. Our standard of review of sufficiency challenges "is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt." **Houck**, **supra** at 449 (quoting **Commonwealth v. Barnswell Jones**, 874 A.2d 108, 120-21 (Pa.Super. 2005).

Appellant claims that without the tainted evidence procured during the illegal search, there was insufficient evidence to support her convictions of possession of a small amount of marijuana, unlawful possession of drug paraphernalia, and driving under suspension, DUI-related. Although Appellant acknowledges that sufficiency claims are reviewed based on the evidence actually admitted at trial, her sole sufficiency argument ignores our standard

_____

[3] It was undisputed that Ms. Lowery also provided consent to search her vehicle.

of review. Had she prevailed on her suppression issue, we would not review the evidence based on a diminished record, as Appellant urges us to do. Rather, we consider all evidence adduced at trial, even that which an appellant claims should be suppressed. *Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa.Super. 2011) (stating "in conducting our [sufficiency] analysis, we consider all of the evidence actually admitted at trial and do not review a diminished record").

Our review of the trial record confirms that the evidence was more than legally sufficient to convict Appellant of the aforementioned charges. In addition to Detective Friel's testimony regarding the marijuana and drug paraphernalia found in Appellant's purse, she admitted that she possessed marijuana and drug paraphernalia. N.T., 11/6/18, at 13, 30. Detective Friel identified Appellant as operating Ms. Lowery's vehicle while her license was under suspension for a DUI-related offense. Appellant's sufficiency claim is meritless.

Judgement of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/29/2020