J. A21035/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JONATHAN NIEVES, | : | No. 1257 EDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered April 12, 2019,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0005873-2015

BEFORE:  LAZARUS, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          Filed: November 12, 2020

Jonathan Nieves appeals from the April 12, 2019 aggregate judgment of sentence of 34 to 68 years' imprisonment imposed after a jury found him guilty of third-degree murder and criminal conspiracy.[1]  After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts of this case as follows:

> Prior to his murder, Hiram Matteo had been involved in an ongoing argument with [appellant], [appellant's] cousin Leroy, and Naqaan Stoner, better known as "Bout Dat" over drug territory near Fourth and Diamond Streets in Philadelphia.  Hiram Mateo's brother, Daniel Falu had been selling drugs in that area.  When Falu was arrested, [a]ppellant, his cousin Leroy and "Bout Dat" began selling there.  Matteo confronted them about selling in Falu's territory, taking money from "Bout Dat" and others working for [appellant] and his cousin Leroy.

---

[1] 18 Pa.C.S.A. §§ 2502(c) and 903, respectively.

In the early morning hours of October 6, 2013, in the middle of the 300 block of Cecil B. Moore Avenue, in the city and county of Philadelphia, Hiram Mateo was riding his bicycle. [Appellant], driving a silver 1999 Honda Civic belonging to his girlfriend, Sonia Lacend, with "Bout Dat" in the front passenger seat was looking for Mateo. Surveillance video shows that at approximately 1:50 a.m., the Honda passed Mateo while he was circling on his bike in the intersection. [Appellant] then reversed the auto until he reached Matteo. A conversation occurred and "Bout Dat" got out of the passenger side of the vehicle[,] approached Matteo and shot him several times. "Bout Dat" got back in the Honda[,] which drove away.

[Appellant] tried to cover up his involvement, telling his girlfriend that he had been robbed and her car was hijacked. He also lied to the police, filing a false police report, again claiming he was beaten and carjacked. Appellant had parked the car several blocks away, and to cover his tracks, he set the car on fire. Eventually [appellant] admitted his involvement in the murder to Sonia Lacend.

In addition to the surveillance footage of the murder, the prosecution produced evidence that [appellant's] cell phone was in the area of the murder at the time of its commission, as well as the area where the car was set on fire at the time of the arson. Furthermore, the cell phone records showed numerous phone calls between [appellant's] phone and his drug partner, Leroy Gonzalez, after the homicide as well as when and where the car was set ablaze and when [a]ppellant was making his false reports to the police.

Trial court opinion, 10/1/19 at 2-4 (citations to notes of testimony omitted).

Appellant was subsequently arrested and charged with murder, criminal conspiracy, unlawful possession of a firearm, carrying a firearm without a license, carrying a firearm on public streets or public property in Philadelphia,

and possessing instruments of crime ("PIC").[2]  On March 1, 2016, appellant proceeded to a jury trial, at the conclusion of which the jury acquitted him of first-degree murder and deadlocked on the remaining charges; a mistrial was declared.  Thereafter, on January 17, 2017, appellant proceeded to a second jury trial, at the conclusion of which he was acquitted of PIC and a mistrial was declared as to the remaining charges.  Appellant's third jury trial commenced on November 28, 2017.  During the course of jury deliberations, the jury foreperson sent a note to the trial court indicating that Juror No. 4 was refusing to deliberate and had advised the other jurors that she refused to follow the law.  (Notes of testimony, 12/4/17 at 2-3.)  The trial court conducted separate *in camera* hearings with both the jury foreperson and Juror No. 4.

The trial court questioned Juror No. 4 at great length with regard to her refusal to deliberate with the other jurors, at the conclusion of which, the trial court removed Juror No. 4, over appellant's objection, and replaced her with alternate Juror No. 13.  (*Id.* at 4-11.)  Thereafter, the reconstituted jury was charged and sent to deliberate anew.  On December 5, 2017, appellant was found guilty of third-degree murder and criminal conspiracy.  Appellant filed a motion for extraordinary relief that was denied by the trial court on April 12,

---

[2] 18 Pa.C.S.A. §§ 2502, 903, 6105(a)(1), 6106(a)(1), 6108, and 907(a), respectively.

2019. As noted, the trial court sentenced appellant to an aggregate term of 34 to 68 years' imprisonment that same day. This timely appeal followed.[3]

Appellant raises the following issues for our review:

> [1.] Did the trial court commit [sic] abuse its discretion in the disqualification of a juror from the panel in violations [sic] of Pa.R.Crim.[P.] 645(A)?
>
> [2.] Was the trials court's colloquy an abuse of discretion to the reconstituted jury in violation of Pa.R.Crim.[P.] 645(C)(1) and (2)?
>
> [3.] . . . .

Appellant's brief at 7.[4]

Appellant first argues that the trial court erred in removing Juror No. 4 from the jury after it received a note from the jury foreperson that she was refusing to deliberate or follow the law. In support of this contention, appellant avers that Juror No. 4's responses to the trial court were ambiguous, and the trial court should have reinstructed the entire jury panel on accomplice liability rather than take the drastic measure of replacing Juror No. 4 outright. (**Id.** at 11, 14-15.) We disagree.

> The decision to discharge a juror is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. This discretion

---

[3] On April 29, 2019, the trial court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b). Following the trial court's grant of an extension of time, appellant filed his Rule 1925(b) statement on August 5, 2019. Thereafter, the trial court filed its Rule 1925(a) opinion on October 1, 2019.

[4] Appellant has indicated that he will not be pursuing his third issue on appeal.

> exists even after the jury has been [e]mpanelled and the juror sworn. Our Supreme Court explained that a finding regarding a venireman's impartiality is based upon determinations of demeanor and credibility that are peculiarly within a trial [court]'s province. . . . [Its] predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record.

***Commonwealth v. Smith***, 206 A.3d 551, 562 (Pa.Super. 2019) (citations and internal quotation marks omitted; brackets in original), ***appeal denied***, 217 A.3d 202 (Pa. 2019).

"The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor. . . ." ***Commonwealth v. Cosby***, 224 A.3d 372, 426 (Pa.Super. 2019), ***appeal granted in part by***, ___ A.3d ___, 2020 WL 3425277 (Pa. June 23, 2020). "Alternate jurors . . . shall replace principal jurors who become unable or disqualified to perform their duties." Pa.R.Crim.P. 645(A).

Here, the record reflects that the trial court questioned Juror No. 4 at great length with regard to her refusal to deliberate with the other jurors, in an apparent effort to evaluate her demeanor. Specifically, the following exchange took place between the trial court and Juror No. 4:

> THE COURT: We're out of the presence of the rest of the jury. We're out of the presence of [appellant]. We are in the back cloakroom with juror number four.

Juror number four, we received a note that you are refusing to vote on third degree murder because you don't think [appellant] should get that high of a penalty; is that correct?

JUROR #4: Correct.

THE COURT: So you're not going to negotiate or deliberate with the rest of the jury concerning this? Your mind is made up?

JUROR #4: My mind is made up.

THE COURT: And I told you the law was that you needed to deliberate and that penalty is not part of your consideration. Are you aware of that?

JUROR #4: Okay.

THE COURT: Well --

JUROR #4: But I still don't think he should get third degree murder. I agree with the other.

THE COURT: Because you think he's going to get too much of a sentence?

JUROR #4: I don't know what the sentence is going to be. I mean I don't know what a third degree murder sentence is. I really don't know what the sentence is going to be. It could be 50 years. It could be two years. I don't know.

THE COURT: The note says that you refuse to vote on third degree murder because you don't think he should get that high of a penalty; is that correct?

JUROR #4: Whatever it is. Whatever the highest is but I don't know what that is.

Notes of testimony, 12/4/17 at 4-5. Following this questioning, the trial court removed Juror No. 4, over appellant's objection, and replaced her with an alternate juror. (*Id.* at 11.)

Based on the foregoing, where Juror No. 4 repeatedly indicated her refusal to apply the law, deliberate, or "render a verdict according to the evidence," we find that it was clearly within the trial court's discretion to disqualify her from serving on the jury. *See Cosby*, 224 A.3d at 426. Accordingly, appellant's first claim warrants no relief.

Appellant next argues that the trial court abused its discretion in failing to conduct a sufficient colloquy of alternate Juror No. 13, and by failing to properly instruct the reconstituted jury with respect to the removal of Juror No. 4, in accordance with Rule 645(C). (Appellant's brief at 7, 11.)

However, our review of the record establishes that appellant failed to object during the trial court's colloquy of Juror No. 13 (*see* notes of testimony, 12/5/17 at 3-4), and did not object during or after the trial court's charge to the reconstituted jury. (*See id.* at 4-5; *see also* notes of testimony, 12/4/17 at 12-13.) When challenging a jury charge, a criminal defendant must raise objections to the jury charge on the record before the jury retires to deliberate, otherwise the objection to the jury instructions is waived. *See* Pa.R.Crim.P. 647(B). "[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue." *Commonwealth v. Houck*, 102 A.3d 443, 451

(Pa.Super. 2014) (citation omitted); **see also** Pa.R.A.P. 302(a) (stating an issue not raised in the trial court is considered waived for purposes of appellate review).  Accordingly, appellant has waived these claims.

For all the foregoing reasons, we affirm the trial court's April 12, 2019 judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary



Date: 11/12/20