J-S02038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROGER I. SUERO | |
| Appellant | No. 1025 EDA 2014 |

Appeal from the Judgment of Sentence of December 5, 2013
In the Court of Common Pleas of Northampton County
Criminal Division at No.: CP-48-CR-0001552-2013

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED FEBRUARY 23, 2015**

Roger I. Suero appeals his December 5, 2013 judgment of sentence, which was imposed following convictions by jury of one count each of second-degree murder, robbery, aggravated assault, burglary, criminal trespass, theft by unlawful taking, terroristic threats, recklessly endangering another person, and possessing an instrument of crime, and two counts of conspiracy.[1]  We affirm.

On January 15, 2012, Suero, his co-defendant Rebecca Johnson, and two other individuals conspired to rob Johnson's grandmother, Carrie Smith. Ms. Smith suffered from preexisting medical conditions of the heart and

---

[1]    **See** 18 Pa.C.S. §§ 2502(b), 3701(a)(1)(ii), 2702(a)(1), 3502(a), 3503(a)(1)(ii), 3921(a), 2706(a)(1), 2705, 907(a), and 903, respectively.

lungs, including coronary artery disease, atrial fibrillation, and interstitial lung disease.  Notes of Testimony ("N.T."), 10/2/2013, at 107.  In the early morning hours of January 15, 2012, Suero and an unknown individual entered Ms. Smith's residence.  Ms. Smith called 911 and told the police officers who responded that she was awoken by two males entering her bedroom.  N.T., 10/1/2013, at 11.  Ms. Smith stated that one man wore a dark, hooded sweatshirt and that the other had blue surgical gloves on his hands.  *Id.* at 12.  The man wearing the sweatshirt told her to remain quiet, and he placed a pillow over her face.  When he removed the pillow, he told Ms. Smith that she would not be harmed if she cooperated.

Ms. Smith reported that the man in the sweatshirt demanded to know the location of her safe, and that the other man searched through her dressers while she led the first man to her safe.  *Id.* at 13.  When she struggled to remember the safe's combination, the man threatened her, and Ms. Smith felt a cold, hard object against the back of her head, which she believed to be a firearm.  *Id.* at 14.  After she opened the safe, Ms. Smith remembered seeing the individual wearing the blue surgical gloves reaching into the safe and removing her belongings.  The men took approximately $35,000.00 cash from the safe.  After removing the contents of the safe, the men took Ms. Smith back to her bedroom, then fled from the residence.

Ms. Smith suffered a heart attack during or shortly after the robbery, and she was hospitalized several times over the subsequent weeks.  On March 16, 2012, Ms. Smith died of exacerbation of congestive heart failure

as a result of the heart attack suffered on January 15, 2012. N.T., 10/2/2013, at 131.

The Commonwealth's theory of the case was that Suero and Rebecca Johnson conspired to commit the robbery because they planned to travel to Colorado to purchase a large amount of marijuana, and that they needed a substantial sum of money to accomplish that goal. Brief for Commonwealth at 25. At trial, the Commonwealth called Steven Wilson as a witness, who testified that Suero and Johnson had attempted to solicit his aid in a marijuana distribution scheme. N.T., 10/1/2013, at 204. Mr. Wilson testified that the quantity of marijuana that Suero and Johnson sought to acquire would have a value of approximately $400,000.00. *Id.* at 210. The Commonwealth introduced this evidence to demonstrate the defendants' motive for the robbery, as it was "evidence tending to show that [Suero] and his co-defendant were in need of obtaining a substantial sum of money to make their marijuana purchase." Brief for Commonwealth at 25.

Prior to trial, Suero moved to exclude Mr. Wilson's testimony as inadmissible evidence of prior bad acts pursuant to Pa.R.E. 404(b)(1). The trial court denied Suero's motion, finding that the evidence was relevant to motive and that the probative value of Wilson's testimony outweighed any prejudice to Suero. Suero also moved to exclude evidence of certain prison phone calls, during which Rebecca Johnson implicated Suero in the crimes. The trial court permitted the introduction of the calls, provided that the

transcripts of the calls be redacted in a manner that would remove any reference to Suero.

On September 30, 2013, Suero and Johnson proceeded to a joint trial, which lasted for six days. During closing arguments, the attorney for the Commonwealth made several statements that Suero alleged to be inflammatory. After closing arguments were completed, Suero objected to the statements and moved for a mistrial, arguing that the assistant district attorney, *inter alia*, misrepresented testimony, stated her personal beliefs about the credibility of witnesses, and improperly commented upon Suero's demeanor during the trial. The parties agreed on a number of curative instructions, and the trial court proceeded to instruct the jury accordingly. The jury returned a verdict that same day, finding Suero guilty of the above-listed charges.[2] On December 5, 2013, the trial court sentenced Suero to, *inter alia*, life imprisonment without the possibility of parole. On December 16, 2013, Suero filed post-sentence motions, which the trial court denied on March 24, 2014.

Suero timely filed a notice of appeal on April 2, 2014. On April 3, 2014, the trial court directed Suero to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Suero timely filed a

---

[2] Suero's co-defendant, Rebecca Johnson, was also convicted of numerous offenses in connection with the incident, and was sentenced to a term of life imprisonment.

concise statement on April 15, 2014. On April 22, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a), which incorporated its March 24, 2014 opinion in support of the order denying Suero's post-sentence motions.

Suero raises the following issues for our review:

1. Whether the trial court erred in refusing to grant a mistrial, or a new trial, by reason of the fact that, during closing arguments by the Commonwealth, counsel for the Commonwealth made multiple inappropriate comments, the effect of which was to inflame the passions, fears or prejudices of the jury?

2. Whether the trial court erred in not declaring a [m]istrial, *sua sponte*, given the gross prosecutorial misconduct displayed during the closing?

3. Whether the trial court erred in denying [Suero's] pretrial motion to preclude evidence of other criminal conduct by [Suero]?

4. Whether the trial court erred in denying [Suero's] pretrial motion to preclude evidence of prison phone calls made by the codefendant implicating [Suero]?

Brief for Suero at 2.

Suero argues that the trial court erred in denying his motion for a mistrial, which was based upon the alleged misconduct of the assistant district attorney during her closing argument. Specifically, Suero argues that the assistant district attorney mischaracterized portions of testimony, stated her own opinion about the credibility of Suero's testimony, allegedly displayed inadmissible evidence on a projector screen, and instructed the jury to consider Suero's demeanor in the courtroom.

"In reviewing a trial court's denial of a motion for a mistrial, our standard is abuse of discretion." *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, . . . discretion is abused." *Commonwealth v. Stollar*, 84 A.3d 635, 650 (Pa. 2014) (citation omitted). "A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." *Commonwealth v. Travaglia*, 28 A.3d 868, 879 (Pa. 2011). Furthermore, "[a] mistrial is not necessary where cautionary instructions are adequate to overcome prejudice." *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011).

In his first issue, Suero argues that the trial court erred by not granting his motion for a mistrial due to the alleged prosecutorial misconduct displayed during the Commonwealth's closing argument. We disagree.

Preliminarily, the trial court and the Commonwealth assert that the motion for a mistrial was not denied, but rather that counsel for Suero withdrew the motion after an *in camera* conference during which the parties discussed the potential efficacy of curative instructions in lieu of a mistrial. Suero asserts that the motion for a mistrial "was not formally withdrawn, but was essentially denied" by the trial court's suggested curative instructions. Brief for Suero at 13. Suero argues that "the instructions given did not, and

could not, ameliorate the improper effects of the prosecution [*sic*] arguments." ***Id.***

During the *in camera* conference, the trial court suggested instructing the jury to disregard any speculation about what a potential witness would have said if he had testified, and to remind the jury that the defendants were under no obligation to assert their innocence. N.T., 10/7/2013, at 140. The trial court and counsel for Suero engaged in the following exchange:

> The Court: . . . I know you're not going to tell me that you're satisfied with that because you're asking for a mistrial, but I'm going to ask you anyway: Would that be satisfactory to the defense if I were to give those two statements? Would you still want to redo this entire trial again?
>
> [Counsel for Suero]: The answer to that is a resounding no, Your Honor. If the jury is instructed in a way that indicates that the comment about what Gavin Holihan might have said is to be utterly disregarded, and comments about who is or isn't believable, if you comment on that in a way that indicates that that's for them and not for us, I think as to those two issues, I'm fine.

***Id.*** Counsel for Suero requested that a number of other details be included in the curative instructions, but made no further demands for a mistrial. ***Id.*** at 143. After the trial court prepared the jury instructions, the parties reviewed the instructions in another *in camera* conference. ***Id.*** at 145-53. While counsel for Suero did suggest an additional instruction, a request that the trial court denied, no parties objected to the curative instructions as

formulated by the trial court.[3]  Furthermore, the trial court asked defense counsel:

> The Court:  Okay.  Under the circumstances now, does that change [Suero's] position as to whether they contend a mistrial needs to be granted?
>
> [Counsel for Suero]:  I'll speak for Mr. Suero, yes, it does.

*Id.* at 149.  After reading the entire jury charge, the trial court asked the attorneys if there were "any objections, corrections, [or] additions" to be made, and all of the attorneys responded in the negative.  *Id.* at 208.

In *Commonwealth v. Brooks*, 508 A.2d 316 (Pa. Super. 1986), a case similarly arising from the robbery and assault of an elderly couple in their home, the defendant's counsel moved for a mistrial due to a prejudicial occurrence during trial.  However, the defendant's counsel "initially objected but then withdrew that objection when the court gave a curative instruction, stating that his concerns had been satisfied."  *Id.* at 322.  As a result, this Court concluded that the withdrawal of counsel's objection precluded the defendant from pursuing the issue on appeal.  *Id.*

The trial court directly asked counsel for Suero if he believed that a mistrial would still be necessary if the court gave curative instructions to the

---

[3]   On appeal, Suero does not challenge the court's refusal to give the suggested instruction.

jury. Although Suero now argues that "the instructions given did not, and could not, ameliorate the improper effects of the prosecution [*sic*] arguments," Brief for Suero at 13, counsel clearly indicated to the trial court that the curative instructions obviated the perceived need for a mistrial. Thus, as in **Brooks**, counsel for Suero withdrew the objection by stating that the curative instructions adequately addressed his concerns.

The result of the withdrawal of this objection is effectively the same as having never raised or preserved the issue in the first instance. That is, on the record before us, this issue has not been preserved for purposes of this appeal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **Commonwealth v. Houck**, 102 A.3d 443, 451 (Pa. Super. 2014) ("[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue.") (citations omitted). Accordingly, Suero's first issue is waived.

In his second issue, Suero contends that, although counsel moved for a mistrial and subsequently withdrew the motion, the trial court nonetheless should have declared a mistrial *sua sponte*. Brief for Suero at 14. We disagree.

Pennsylvania Rule of Criminal Procedure 605(B)[4] provides as follows:

---

[4] In his brief, Suero cites a previous version of this rule, Pa.R.Crim.P. 1118(b). The current rule is Pa.R.Crim.P. 605(B).

> When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

Pa.R.Crim.P. 605(B). We review a trial court's decision on this matter for an abuse of discretion. *See Commonwealth v. Orie*, 88 A.3d 983, 995 (Pa. Super. 2014) ("It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision."). Further, the United States Supreme Court has disapproved of the "application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." *Illinois v. Somerville*, 410 U.S. 458, 462 (1973). "The broad discretion reserved to the trial judge in such circumstances has been consistently reiterated . . . ." *Id.*

Suero's argument that the trial court erred in not *sua sponte* declaring a mistrial is unconnvincing, particularly in light of the fact that, having initially sought a mistrial, counsel shortly thereafter stated that a mistrial would not be necessary. Suero suggests that, after confirming that the proposed curative instructions were sufficient to address Suero's concerns and that a mistrial would not be necessary, the court nevertheless should have declared a mistrial. Brief for Suero at 16. In his brief, Suero seems to acknowledge the peculiarity of this argument, observing that it "seems

paradoxical" to assert that the trial court should have declared a mistrial *sua sponte* under these circumstances. *Id.* at 14.

Citing *United States v. Dinitz*, 424 U.S. 600, 609 (1976), Suero argues that "[o]f paramount concern is the defendant's right to retain primary control over the course to be followed in the event of prosecutorial or judicial error in order to protect his valued right to have his trial completed in a particular tribunal." Brief for Suero at 16. However, Suero argues, "[a]ny perceived right [Suero] has in having the matter heard by the first jury empanelled is no longer an issue when [Suero] in fact made a motion for [a] mistrial." *Id.* Thus, presumably, the trial court needed not consider Suero's interest in completing the trial and should have declared a mistrial *sua sponte* in response to the "gross prosecutorial misconduct." *Id.* at 14. This argument ignores a defendant's role in determining the best course of action in response to an allegedly prejudicial event. In *Dinitz*, the United States Supreme Court, when considering the interaction between mistrials and the Double Jeopardy Clause, distinguished between *sua sponte* declarations of a mistrial and those granted upon the defendant's motion, as follows:

> The distinction between mistrials declared by the court *sua sponte* and mistrials granted at the defendant's request or with his consent is wholly consistent with the protections of the Double Jeopardy Clause. Even when judicial or prosecutorial error prejudices a defendant's prospects of securing an acquittal, he may nonetheless desire "to go to the first jury and, perhaps, end the dispute then and there with an acquittal." *United States v. Jorn*, 400 U.S. 470, 484 (1971). Our prior decisions recognize the defendant's right to pursue this course in the

> absence of circumstances of manifest necessity requiring a *sua sponte* judicial declaration of mistrial. But it is evident that when judicial or prosecutorial error seriously prejudices a defendant, he may have little interest in completing the trial and obtaining a verdict from the first jury. The defendant may reasonably conclude that a continuation of the tainted proceeding would result in a conviction followed by a lengthy appeal and, if a reversal is secured, by a second prosecution.

*Dinitz*, 424 U.S. at 608 (citation modified).

This language does suggest that there can be circumstances where the necessity for a mistrial is so great that a defendant's tactical decision to continue with the trial would be inappropriate. However, in the instant case, we cannot interpret the trial court's power to declare a mistrial *sua sponte* as a license to hedge one's bets by withdrawing a motion for a mistrial, then alleging that it was error for the court to allow the trial to continue after receiving an unfavorable verdict. After all, it is the defendant's right "to retain primary control over the course to be followed" in response to a prejudicial occurrence. Brief for Suero at 16; *see Dinitz*, 424 U.S. at 609. Suero exercised this right by moving for a mistrial, then withdrawing the motion and allowing the case to reach the jury.

Moreover, the trial court did not abuse its discretion in declining to declare a mistrial *sua sponte* as a result of the comments made by the Commonwealth. *See Orie*, 88 A.3d at 995.

"To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Commonwealth v. Spotz*, 47 A.3d 63, 97 (Pa. 2012)

- 12 -

(citation omitted). "The touchstone is the fairness of the trial, not the culpability of the prosecutor." *Id.* The Court in *Spotz* also explained that, "[a] prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments." *Id.* In reviewing a claim of misconduct, "[a]ny challenge to a prosecutor's comment must be evaluated in the context in which the comment was made." *Id.* Furthermore, "[n]ot every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial." *Id.* at 98. Rather, "[c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in [the jurors'] minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." *Commonwealth v. Bryant*, 67 A.3d 716, 727 (Pa. 2013) (citation omitted).

First, Suero argues that the Commonwealth mischaracterized the victim's statements about the skin color of one of the perpetrators, stating that Ms. Smith "thought she saw white on the person's arm as the arm was going into the safe." N.T., 10/7/2013, at 109. Because Ms. Smith was deceased, her description of the perpetrators was relayed to the jury by an investigating police officer, who testified that Ms. Smith had identified one of the men as having a white arm. The officer's testimony at one point indicated that it was the man with the blue gloves that had the white arm, but at another point indicated that it may have been the other man. In discussing Suero's objection, the trial court even indicated that it found the

testimony about the color of the arm to be confusing. **See** N.T., 10/7/2013, at 150.

Although the Commonwealth's characterization of Ms. Smith's statements may not have been exact, the context of the comment suggests that this description, even if factually questionable, was not designed to deprive Suero of a fair trial. It certainly did not have the "unavoidable effect" of prejudicing the jury or establishing a fixed bias or hostility in the juror's perceptions of Suero. **See Bryant**, 67 A.3d at 727. Moreover, the trial court specifically instructed the jurors that they were "to be guided solely by [their] collective recollection of the facts," and not by the attorneys' recounting of those facts. N.T., 10/7/2013, at 176. Because the assistant district attorney's comment about the color of a perpetrator's arm did not deprive Suero of a fair trial and, if at all problematic, was addressed by the jury instructions, the comment was not reversible error.

Second, Suero argues that the assistant district attorney stated her personal opinion about the credibility of Suero's testimony. Brief for Suero at 9, 12. These statements were made regarding Suero's testimony about his consultation with an immigration attorney. The assistant district attorney characterized Suero's testimony as "absolutely ridiculous" and "not believable." N.T., 10/7/2013, at 111, 112. Regarding prosecutorial comments about the credibility of witnesses, our Supreme Court has held that "as long as a prosecutor does not assert his personal opinions, he or she may, within reasonable limits, comment on the credibility of a defense

witness." ***Commonwealth v. Jones***, 668 A.2d 491, 515 (Pa. 1995) (citations omitted). Furthermore:

> While it is improper for a prosecutor to offer any personal opinion as to the guilt of the defendant or the credibility of the witnesses, it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt . . . . [The] prosecutor must be free to present his or her arguments with logical force and vigor, and comments representing mere oratorical flair are not objectionable.

***Commonwealth v. Burno***, 94 A.3d 956, 974 (Pa. 2014) (citation omitted).

The assistant district attorney's characterization of Suero's testimony as "absolutely ridiculous" and "not believable" certainly were comments on Suero's credibility as a witness. The question becomes whether these comments lie outside of the "reasonable limits" within which a prosecutor's commentary must remain. ***See Jones***, 668 A.2d at 515.

The Commonwealth relies upon ***Commonwealth v. Rose***, 960 A.2d 149, 155 (Pa. Super. 2008), for the proposition that the assistant district attorney's statements about Suero's credibility were not expressions of personal opinion, but rather were arguments for the Commonwealth's position. Brief for Commonwealth at 16. In ***Rose***, this Court held that a prosecutor's repeated invocation during argument of the "Commonwealth's opinion" or "Commonwealth's belief" about the credibility of witnesses "were not improper **personal** statements of credibility or guilt; rather, they set forth the Commonwealth's position." ***Rose***, 960 A.2d at 155 (emphasis in

original).  While we express no opinion about the viability of such a distinction, in the instant case, it is apparent that the assistant district attorney did not shield her comments by using the term "Commonwealth's opinion." *Id.*  Although she did not state expressly that she, personally, did not believe the testimony, that conclusion easily can be drawn from her commentary.  Thus, the characterization of Suero's testimony as "absolutely ridiculous" and "not believable" rises beyond the level of "mere oratorical flair." *Burno*, 94 A.3d at 974.  *Rose* does not apply.

However, even if the jurors understood the assistant district attorney's comments to be an expression of her personal beliefs, the trial court mitigated the influence of such beliefs in the jury instructions, instructing the jurors that they were the "sole judges of credibility" and that "[i]t is immaterial whether one of the attorneys believes a witness was not credible." N.T., 10/7/2013, at 163.  Suero has not developed an explanation of why these jury instructions were an inadequate remedy, rather stating generally concerning all of the allegations of prosecutorial misconduct that "the instructions given did not, and could not, ameliorate the improper effects of the prosecution [*sic*] arguments." Brief for Suero at 13.  However, the court's instructions on the issue of personal belief were clear and direct, and "[t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1184 (Pa. 2011). Given the particularity of the jury instruction, of which counsel for Suero approved, we conclude that the instructions cured any potential harm created by the

assistant district attorney's comments, and that, therefore, the comments did not deprive Suero of a fair trial. We discern no reversible error.

Third, Suero argues that the assistant district attorney misrepresented Steven Wilson's testimony. Brief for Suero at 10. At trial, Wilson testified that Suero sought his assistance in selling the marijuana that he planned to purchase, and he assumed that Suero sought his assistance "because Rebecca told him that I smoked weed." N.T., 10/1/2013, at 209. In its closing argument, the Commonwealth summarized Wilson's testimony, stating that Wilson "sold drugs." N.T., 10/7/2013, at 106. Referring again to his testimony, she stated that Wilson had admitted to having "done drugs or sold drugs." *Id.* Suero suggests that the misstatement increases the credibility of the Commonwealth's theory that Suero attempted to enlist Wilson's aid in selling marijuana. Brief for Suero at 11. We disagree with Suero's assertion that whether Steven Wilson used or sold drugs is a "critical fact," Brief for Suero at 11, particularly where the account of the marijuana distribution plot was presented properly to the jury. The fact in question was mere speculation on Wilson's part as to why Suero would attempt to enlist his aid. At best, this statement that Wilson sold drugs undermined the credibility of Wilson's testimony, which was a critical part of the Commonwealth's case. Especially given the gravity of the crimes with which Suero was charged, it is immaterial whether an associate of his sold marijuana or used marijuana. Thus, the comment about Steven Wilson's sale or use of marijuana did not deprive Suero of a fair trial.

Fourth, Suero argues that the Commonwealth showed the jury a transcription of Rebecca Johnson's phone calls without the required redaction during closing arguments. Brief for Suero at 11. There is no evidence of record to this effect. It is the responsibility of an appellant "to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." *Commonwealth v. Bongiorno*, 905 A.2d 998, 1000 (Pa. Super. 2006) (*en banc*). Therefore, we are not able to conduct a meaningful review of this claim of prosecutorial misconduct.

Fifth, Suero argues that it was erroneous for the Commonwealth to suggest that the jurors consider Suero's demeanor while Ms. Smith's 911 call was played for the jury. Brief for Suero at 12. The Commonwealth commented that Suero showed "no reaction" to the recording. N.T., 10/7/2013, at 126. Suero argues that this statement suggested "that the jury should engage in an entirely improper evaluation of [Suero's] emotional condition and character without any factual basis with which to do so." Brief for Suero at 12. In *Commonwealth v. Hernandez*, 590 A.2d 325, 331 (Pa. Super. 1991), this Court held that a prosecutor's comments about the demeanor of the defendant did not constitute reversible error, and stated that an "appellant's demeanor as observed by the jury is a proper consideration." *Hernandez*, 590 A.2d at 331. Nonetheless, in *Hernandez*, the trial court gave an instruction that the jurors were to disregard the comments of the prosecutor and to consider only their own observations of

the defendant on the witness stand. *Id.* Further, this Court held that "the remarks were not prejudicial but merely were arguments based on the evidence." *Id.*

In the instant case, when discussing the issue *in camera*, the trial court suggested that any error would be cured by the instruction to the jurors to use their common sense in evaluating the facts. *See* N.T., 10/7/2013, at 136. While defense counsel did not consider this instruction to be fully adequate, he did not request any further or additional instruction on the matter, either *in camera* or after the trial court asked for "any objections, corrections, [or] additions" to the jury instructions. *Id.* at 136, 208.

While the Commonwealth's comment about Suero's demeanor while listening to the 911 call may not have been entirely appropriate, the comment was brief and did not rise to the level of infringing Suero's Fifth Amendment rights to silence and to be free from self-incrimination.[5] The assistant district attorney did not state that Suero's demeanor reflected a lack of remorse, but rather that he was not "really interested in listening to that tape." N.T., 10/7/2013, at 126. As the trial court noted, the jurors were free to observe Suero and to formulate their own judgments, and were instructed to use their common sense in doing so. *See Hernandez*, 590

_____

[5] U.S. Const. amend. V; Pa. Const. art. I, § 9.

A.2d at 331. Under these circumstances, we hold that the Commonwealth's comment about Suero's demeanor was not so prejudicial as to deprive Suero of a fair trial, and any error in this regard was harmless. Accordingly, after careful review, we conclude that the Commonwealth did not commit prosecutorial misconduct, and thus, even if Suero had not withdrawn his motion for a mistrial, the trial court did not err or abuse its discretion in declining to declare a mistrial *sua sponte*. Therefore, Suero's second issue does not merit relief.

In his third issue, Suero argues that the trial court erred in admitting evidence of Suero's involvement in the scheme to purchase a large quantity of marijuana in Colorado. Brief for Suero at 17. Suero asserts that the prejudicial effect of this evidence outweighed any probative value. ***Id.*** at 19. We disagree.

The admission of evidence of prior criminal acts is governed by Rule 404(b) of the Pennsylvania Rules of Evidence, which provides, in pertinent part:

> **(b)  Crimes, Wrongs or Other Acts.**
>
> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

"The admission of evidence of prior bad acts is solely within the discretion of the trial court, and the court's decision will not be disturbed absent an abuse of discretion." *Commonwealth v. Patterson*, 91 A.3d 55, 68 (Pa. 2014) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record." *Commonwealth v. Melvin*, 103 A.3d 1, 35 (Pa. Super. 2014) (citation omitted).

Here, the trial court permitted the Commonwealth to introduce evidence of the criminal plot for the purpose of proving the defendants' motive to commit the robbery—an enumerated exception to the rule prohibiting evidence of prior criminal acts. *See* Pa.R.E. 404(b)(2). The Commonwealth's theory was that Suero and his co-defendant, Rebecca Johnson, required a very large sum of money in order to complete the purchase and transportation of the marijuana, and that they intended to acquire the funds, in part, by robbing Carrie Smith.

Suero filed a motion *in limine* seeking exclusion of evidence of the plot, which the trial court denied. The trial court determined that the probative value and the need for the evidence was quite high, as it established a motive for the robbery of one of the defendants' grandmother, which is "an act which, absent a motive, would likely seem incredible." Post

Sentence Motion Opinion ("P.S.O."), 3/24/2014, at 8. The court further held that the prejudicial effect of the evidence "would only have been slight, particularly in light of the fact that the crimes for which [Suero] was on trial were more disturbing than the sale of marijuana." *Id.* To further mitigate any prejudice to Suero from the introduction of this evidence, the trial court gave a cautionary instruction to the jury, instructing it to consider the evidence for the purpose of establishing motive only. N.T., 10/1/2013, at 138. The court repeated this instruction during its concluding charge to the jury. N.T., 10/7/2013, at 167-68.

Under these circumstances, we discern no abuse of discretion. The trial court considered the appropriate factors in making its evidentiary ruling, provided reasonable explanations for its determinations of the probative value and prejudicial effect of the evidence, and gave cautionary instructions to the jury. Further, while Suero's brief details the manner in which the court is required to balance the probative value and prejudicial effect of evidence, Suero does not point to any specific act or consideration undertaken by the trial court, and merely asserts that "[t]he prejudicial effect of the subject testimony far outweighed any probative value . . . ." Brief for Suero at 19. This argument, therefore, amounts to a bald assertion that the trial court reached the incorrect result—a conclusion that, even if accurate, falls far short of an abuse of discretion. *See Melvin*, 103 A.3d at 35 ("An abuse of discretion is not merely an error of judgment . . . ."). Accordingly, Suero's third issue does not merit relief.

Finally, in his fourth issue, Suero argues that the trial court erred in admitting evidence of prison phone calls made by Rebecca Johnson which implicated Suero. The trial court ordered, however, that any statements by Rebecca Johnson were to be redacted in a manner that removed any identification of Suero, with any reference to his name being replaced with a pronoun and any mention of his whereabouts omitted entirely. This issue, however, is waived.

Preliminarily, although Suero's argument would appear to be premised upon the holding of ***Bruton v. United States***, 391 U.S. 123 (1968),[6] Suero cites no legal authority in support of the argument, leaving this Court to guess about the legal basis for the allegation of error, whether it be hearsay, ***Bruton***, or otherwise. Because of Suero's failure to cite a pertinent authority, Suero has waived this issue. ***See*** Pa.R.A.P. 2119(a); ***Commonwealth v. Simmons***, 56 A.3d 1280, 1286 (Pa. Super. 2012) (finding that issue of prejudice sustained from detention while awaiting a probation revocation hearing was waived where appellant failed to cite authority in support of claim).

_____

[6]    In ***Bruton***, the United States Supreme Court held that the admission of a co-defendant's confession that implicated the defendant at a joint trial constituted prejudicial error even though the trial court gave a clear, concise, and understandable cautionary instruction. ***Bruton***, 391 U.S. at 137.

Moreoever, our Supreme Court has held that "[i]f a confession can be edited so that it retains its narrative integrity and yet in no way refers to [the] defendant, then use of it does not violate the principles of **Bruton**." **Commonwealth v. Johnson**, 378 A.2d 859, 860 (Pa. 1977). Our Supreme Court has also held that such a statement "will violate the Confrontation Clause only when the jury can tell from the face of the statement to whom it is referring; if the jury must refer to other evidence to determine to whom the statement refers, the Confrontation Clause rights of the defendant are not violated." **Commonwealth v. Miller**, 819 A.2d 504, 512 (Pa. 2002). While Suero argues that "the redaction was insufficient to prevent the identification of [Suero] as the person referred to," Suero does not point to anything on the face of the statement that would have identified him, particularly where there were other men involved in the case to which the pronouns may have referred. Thus, even if Suero had properly developed this argument, it would not merit relief.

Accordingly, upon review of the certified record, the facts of the case, and the applicable principles of law, we find no basis to grant relief upon any of Suero's claims.

Judgment of sentence affirmed.'

- 24 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/23/2015