J-S02039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| REBECCA L. JOHNSON | |
| Appellant | No. 1469 EDA 2014 |

Appeal from the Judgment of Sentence of December 5, 2013
In the Court of Common Pleas of Northampton County
Criminal Division at Nos.: CP-48-CR-0000559-2013
CP-48-CR-0002629-2012
CP-48-CR-0002774-2012

BEFORE: MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.: **FILED MARCH 09, 2015**

Rebecca L. Johnson ("Appellant") appeals her December 5, 2013 judgment of sentence, which was imposed following convictions by a jury of one count each of second-degree murder, robbery, aggravated assault, burglary, criminal trespass, theft by unlawful taking, terroristic threats, possessing an instrument of crime, flight to avoid apprehension, escape, resisting arrest, and fleeing or attempting to elude an officer; five counts of recklessly endangering another person; two counts of conspiracy; and two counts of criminal solicitation.[1] We affirm.

---

[1]    **See** 18 Pa.C.S. §§ 2502(b), 3701(a)(1)(ii), 2702(a)(1), 3502(a), 3503(a)(1)(ii), 3921(a), 2706(a)(1), 907(a), 5126(a), 5121(a), 5104, 3733(a), 2705, 903, and 902, respectively.

On January 15, 2012, Appellant, her co-defendant Roger Suero, and two other individuals conspired to rob Appellant's grandmother, Carrie Smith. Ms. Smith suffered from preexisting medical conditions of the heart and lungs, including coronary artery disease, atrial fibrillation, and interstitial lung disease. Notes of Testimony ("N.T."), 10/2/2013, at 107. In the early morning hours of January 15, 2012, Suero and an unknown individual entered Ms. Smith's residence. Ms. Smith called 911 and told the police officers who responded that she had been awakened by two males that entered her bedroom. N.T., 10/1/2013, at 11. Ms. Smith stated that one man wore a dark hooded sweatshirt and that the other had blue surgical gloves on his hands. *Id.* at 12. The man wearing the sweatshirt told her to remain quiet, and he placed a pillow over her face. When he removed the pillow, he told Ms. Smith that she would not be harmed if she cooperated.

Ms. Smith reported that the man in the sweatshirt demanded to know the location of her safe, and that the other man searched through her dressers while she led the first man to her safe. *Id.* at 13. When she struggled to remember the safe's combination, the man threatened her, and Ms. Smith felt a cold, hard object against the back of her head, which she believed to be a firearm. *Id.* at 14. After she opened the safe, Ms. Smith remembered seeing the individual wearing the blue surgical gloves reaching into the safe and removing her belongings. The men took approximately $35,000.00 cash from the safe. After removing the contents of the safe, the men took Ms. Smith back to her bedroom, then fled from the residence.

Ms. Smith suffered a heart attack during or shortly after the robbery, and she was hospitalized several times in the weeks that followed the robbery. On March 16, 2012, Ms. Smith died of exacerbation of congestive heart failure as a result of the heart attack suffered on January 15, 2012. N.T., 10/2/2013, at 131.

The Commonwealth's theory of the case was that Appellant and Roger Suero conspired to commit the robbery because they planned to travel to Colorado to purchase a large amount of marijuana and needed a substantial sum of money to accomplish that goal. Brief for Commonwealth at 20. At trial, the Commonwealth called Steven Wilson as a witness, who testified that Appellant and Suero had attempted to solicit his aid in a marijuana distribution scheme. N.T., 10/1/2013, at 204. Mr. Wilson testified that the quantity of marijuana that Appellant and Suero sought to acquire would have a value of approximately $400,000.00. *Id.* at 210. The Commonwealth introduced this evidence to demonstrate the defendants' motive for the robbery, because it "tend[ed] to show that [Appellant] and her co-defendant were in need of obtaining a substantial sum of money to make their marijuana purchase." Brief for Commonwealth at 20. Prior to trial, Appellant moved to exclude Mr. Wilson's testimony as inadmissible evidence of prior bad acts pursuant to Pa.R.E. 404(b)(1). The trial court denied Appellant's motion, finding that the evidence was relevant to motive and that the probative value of Wilson's testimony outweighed any potential prejudice to Appellant.

On September 30, 2013, Appellant and Suero proceeded to a joint trial, which lasted for six days. During closing arguments, the assistant district attorney made several statements that counsel for Suero alleged to be inflammatory. After closing arguments were completed, counsel for Suero objected to the statements and moved for a mistrial, arguing that the assistant district attorney, *inter alia*, misrepresented testimony, stated her personal beliefs about the credibility of witnesses, and improperly commented upon the defendants' demeanors during the trial. After an *in camera* discussion, counsel for Appellant joined in the motion for a mistrial. However, the parties agreed upon a number of curative instructions, and the trial court proceeded to instruct the jury accordingly. The jury returned a verdict that same day, finding Appellant guilty of the above-listed charges.[2] On December 5, 2013, the trial court sentenced Appellant, *inter alia*, to life imprisonment without the possibility of parole. On December 16, 2013, Appellant filed post-sentence motions, which the trial court denied on March 24, 2014.

Appellant timely filed a notice of appeal on April 22, 2014. On May 13, 2014, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After being appointed new counsel on June 24, 2014, Appellant filed a concise statement

---

[2] Suero also was convicted of numerous offenses in connection with the incident, and also was sentenced to a term of life imprisonment.

on August 28, 2014. On September 3, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a), which incorporated its March 24, 2014 opinion in support of the order denying Appellant's post-sentence motions.

Preliminarily, we must determine whether Appellant has preserved her claims for our review. We note that Appellant's concise statement was filed over two months beyond the deadline established by the trial court's order, but followed a change in counsel. Ordinarily, the failure to file a concise statement will result in waiver of all issues on appeal.[3] However, the Rules of Appellate Procedure also provide, in relevant part:

> If an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been *per se* ineffective, the appellate court shall remand for the filing of a Statement *nunc pro tunc* and for the preparation and filing of an opinion by the judge.

Pa.R.A.P. 1925(c)(3). In **Commonwealth v. Burton**, 973 A.2d 428 (Pa. Super. 2009) (*en banc*), this Court extended Pa.R.A.P. 1925(a)(c)(3) to situations where the appellant filed a concise statement, but failed to do so within the court-ordered deadline. This Court reasoned:

---

[3]  **See** Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Hill**, 16 A.3d 484, 494 (Pa. 2011) ("[I]n order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925. Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived.") (citing **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998)).

> The complete failure to file the 1925 concise statement is *per se* ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal. Likewise, the untimely filing is *per se* ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal. Thus[,] untimely filing of the [Rule] 1925 concise statement is the equivalent of a complete failure to file. Both are *per se* ineffectiveness of counsel from which appellants are entitled to the same prompt relief.

*Id.* at 432-33 (footnote omitted). Having determined that the remand procedure applies to untimely filed concise statements, this Court explained that a remand is not necessary where the concise statement eventually was filed and the trial court had an opportunity to address the issues raised. *See id.* at 433; *Commonwealth v. Thompson*, 39 A.3d 335, 340 (Pa. Super. 2012).

In the instant case, Appellant, while still represented by trial counsel, failed to file a concise statement before the court-ordered deadline. This failure constitutes *per se* ineffectiveness on the part of Appellant's trial counsel. *See Burton*, 973 A.2d at 433. However, Appellant's subsequently-appointed attorney filed a concise statement on August 28, 2014, and the trial court addressed Appellant's claims of error in its September 3, 2014 opinion. Because the trial court had an adequate opportunity to prepare an opinion addressing the issues being raised on appeal, we may decide Appellant's appeal on its merits. *Id.*

Appellant raises the following issues for our review:

1. Whether the [t]rial [c]ourt erred in not granting [Appellant's] motion for mistrial or [Appellant's] motion on the grounds of the

prosecutorial misconduct committed during the prosecutor's closing argument[,] where the arguments as well as the tone and manner of the entire prosecution [*sic*] closing argument[] could only have improperly enflamed the passions of the jury, convinced the jury of the personal opinions of the prosecutor on issues of guilt and credibility, and encouraged the jury to disregard valid applicable legal principles[?]

2. Whether the trial court erred in denying [Appellant's] motion to preclude evidence relating to allegations that [Appellant] was attempting to arrange a controlled substance transaction in another state[, where the] evidence was irrelevant and its prejudice [*sic*] effects substantially outweighed any probative value[?]

Brief for Appellant at 6.

In her first issue, Appellant argues that, during closing argument, the prosecution mischaracterized portions of the trial testimony and inappropriately instructed the jury to consider Appellant's non-testimonial demeanor in the courtroom.[4] Appellant argues that the trial court erred in

_____

[4] Appellant also raises numerous claims of prosecutorial misconduct that relate only to Suero. Appellant alleges that the prosecution made inflammatory statements of opinion about Suero's credibility and guilt and displayed inadmissible portions of evidence that prejudiced Suero. Brief for Appellant at 12-13. Neither before this Court nor in the trial court has Appellant successfully established a nexus between the conduct in question and prejudice to her defense specifically. Consequently, these claims warrant no further discussion. *See* Pa.R.A.P. 2119(a); **Commonwealth v. B.D.G.**, 959 A.2d 362, 371-72 (Pa. Super. 2008) (*en banc*) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived.").

denying her motion for a mistrial, which was based upon the alleged misconduct of the prosecution.[5] We disagree.

Preliminarily, the trial court asserts that it did not formally deny the motion for a mistrial. Instead, counsel for Suero and counsel for Appellant withdrew their motions after an *in camera* conference during which the parties discussed the potential efficacy of curative instructions in lieu of a mistrial. In her brief, Appellant implicitly disagrees, asserting that Appellant's "mistrial motion was denied." Brief for Appellant at 14.

During the *in camera* conference, the trial court suggested instructing the jury to disregard any speculation about what a potential witness would have said if he had testified, and to remind the jury that the defendants were under no obligation to assert their innocence. N.T., 10/7/2013, at 140. The trial court and counsel for Suero engaged in the following exchange:

> The Court: . . . I know you're not going to tell me that you're satisfied with that because you're asking for a mistrial, but I'm going to ask you anyway: Would that be satisfactory to the defense if I were to give those two statements? Would you still want to redo this entire trial again?
>
> [Counsel for Suero]: The answer to that is a resounding no, Your Honor. If the jury is instructed in a way that indicates that the comment about what Gavin Holihan might have said is to be utterly disregarded, and comments about who is or isn't

---

[5] Counsel for Suero initially moved for a mistrial after the assistant district attorney's closing argument. N.T., 10/7/2013, at 132. Counsel for Appellant joined in that motion during an *in camera* conference, but noted that "the more significant issues really centered around Roger Suero." *Id.* at 144.

believable, if you comment on that in a way that indicates that that's for them and not for us, I think as to those two issues, I'm fine.

*Id.* Counsel for Suero requested that a number of other details be included in the curative instructions, but did not renew his demand for a mistrial. *Id.* at 143. Counsel for Appellant said nothing during this discussion, but expressly joined in the motion for a mistrial at the conclusion of the conference. *Id.* at 144. After the trial court prepared the jury instructions, the parties reviewed the instructions in another *in camera* conference. *Id.* at 145-53. While counsel for Suero did suggest an additional instruction, a request that the trial court denied, no party objected to the curative instructions as formulated by the trial court. Furthermore, the trial court again asked defense counsel whether the curative instructions were sufficient:

> The Court: Okay. Under the circumstances now, does that change the defendant's position as to whether they contend a mistrial needs to be granted?
>
> [Counsel for Suero]: I'll speak for Mr. Suero, yes, it does.

*Id.* at 149. Counsel for Appellant did not respond to the question. *Id.* After reading the entire jury charge, the trial court asked the attorneys if they had "any objections, corrections, [or] additions" to be made, and each attorney responded in the negative. *Id.* at 208.

In ***Commonwealth v. Brooks***, 508 A.2d 316 (Pa. Super. 1986), a case similarly arising from the robbery and assault of an elderly couple in

their home, the defendant's counsel moved for a mistrial due to allegedly prejudicial prosecutorial conduct that occurred during trial. The defendant's counsel "initially objected but then withdrew that objection when the court gave a curative instruction, stating that his concerns had been satisfied." *Id.* at 322. This Court concluded that the withdrawal of counsel's objection precluded the defendant from pursuing the issue on appeal. *Id.*

In the instant case, the trial court directly asked whether counsel for the defendants maintained that a mistrial still would be necessary if the court gave curative instructions to the jury. Although Appellant now argues that "the instruction given did not, and could not, ameliorate the improper effects of the prosecution [*sic*] arguments," Brief for Appellant at 14, counsel for Suero clearly indicated to the trial court that the curative instructions obviated the perceived need for a mistrial. Thus, as in **Brooks**, counsel for Suero withdrew the objection, indicating that the curative instructions adequately addressed his concerns. As to Appellant's objection, the trial court noted as follows:

> Appellant's counsel was silent, but his prior indication of satisfaction with the proposed curative instructions, when coupled with his silence and his clear practice of working in concert with Suero's counsel, we can only conclude that [Appellant's] motion for a mistrial was likewise withdrawn and that counsel was satisfied with the curative instructions . . . .

Post-Sentence Motion Opinion ("P.S.O."), 3/24/2014, at 5.

Whether one attorney's withdrawal of a motion can bind another attorney who joined initially in the motion and stands silently as the first

- 10 -

attorney withdraws that motion seems to us a more complex (and consequential) question than the trial court suggests. However, we need not resolve the question today. Effectively vindicating the trial court's questionable inference, Appellant conceded before the trial court that the motion for a mistrial was withdrawn. *See* Brief In Support of Post-Sentence Motion, 2/19/2014, at 10 ("At the conclusion of the Commonwealth's closing argument, . . . defense counsel presented a motion for mistrial based upon the argument made by the Commonwealth. Defendant's mistrial motion was withdrawn, and the [c]ourt gave a cautionary instruction."). Thus, while we are not persuaded entirely by the trial court's reasoning on this matter, Appellant's post-trial affirmation that the motion had been withdrawn renders the question moot.

The withdrawal of a motion is tantamount to never having raised the underlying objection in the first instance. Thus, this issue has not been preserved for purposes of this appeal. ***See Brooks***, *supra*; Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); ***Commonwealth v. Houck***, 102 A.3d 443, 451 (Pa. Super. 2014) ("[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue."). Accordingly, Appellant's first issue is waived.

Moreover, even if Appellant's motion for a mistrial had not been withdrawn, the trial court's denial of that motion would not constitute an abuse of discretion. "To constitute a due process violation, the prosecutorial

misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." ***Commonwealth v. Spotz***, 47 A.3d 63, 97 (Pa. 2012) (citation omitted). "The touchstone is the fairness of the trial, not the culpability of the prosecutor." ***Id.*** The Court in ***Spotz*** also explained that, "[a] prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments." ***Id.*** In reviewing a claim of misconduct, "[a]ny challenge to a prosecutor's comment must be evaluated in the context in which the comment was made." ***Id.*** Furthermore, "[n]ot every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial." ***Id.*** at 98. Rather, "[c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in [the jurors'] minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." ***Commonwealth v. Bryant***, 67 A.3d 716, 727 (Pa. 2013) (citation omitted).

Appellant challenges the prosecution's actions during closing arguments in several regards. First, Appellant argues that the Commonwealth mischaracterized the victim's statements about the skin color of one of the perpetrators, stating that Ms. Smith "thought she saw white on the person's arm as the arm was going into the safe." N.T., 10/7/2013, at 109. Because Ms. Smith was deceased, her description was introduced into evidence by an investigating police officer, who testified that Ms. Smith had identified one of the men as having a white arm, but seemed

to contradict himself as to which perpetrator Ms. Smith identified as having white skin. The trial court even indicated that it found the testimony about the color of the arm to be confusing. *See* N.T., 10/7/2013, at 150. Viewed in context, the officer's review of Ms. Smith's statements did not have the "unavoidable effect" of prejudicing the jury or establishing a fixed bias or hostility in the juror's perceptions of Appellant. *See Bryant*, 67 A.3d at 727. Moreover, the trial court instructed the jurors that they were "to be guided solely by [their] collective recollection of the facts," and not by the attorneys' recounting of those facts. N.T., 10/7/2013, at 176. Because the prosecution's comment about a perpetrator's skin color did not deprive Appellant of a fair trial and was addressed by the jury instructions, the comment would not constitute reversible error.

Second, Appellant argues that the assistant district attorney misrepresented Steven Wilson's testimony. Brief for Appellant at 12-13. Wilson testified that Suero sought his assistance in selling the marijuana that he planned to purchase, and assumed that Suero sought his assistance "because Rebecca told him that I smoked weed." N.T., 10/1/2013, at 209. However, in its closing argument, the Commonwealth erroneously stated that Wilson "sold drugs." N.T., 10/7/2013, at 106. Appellant suggests that the misstatement improperly bolstered the Commonwealth's theory that Appellant and Suero sought to enlist Wilson's aid in selling marijuana. Brief for Appellant at 13. We disagree. The fact in question was mere speculation on Wilson's part as to why Suero would attempt to enlist his aid. Given the

quantum of evidence supporting the Commonwealth's theory of the case, it was immaterial whether an associate of theirs sold marijuana or used marijuana. Thus, the comment about Steven Wilson's sale or use of marijuana did not deprive Appellant of a fair trial.

Third, Appellant argues that it was erroneous for the Commonwealth to suggest that the jurors consider Appellant's demeanor while Ms. Smith's 911 call was played for the jury. Brief for Appellant at 13. The Commonwealth commented that Appellant appeared to be "not concerned" about the distress that her grandmother experienced during the robbery. N.T., 10/7/2013, at 127. Appellant argues that this statement suggested "that the jury should engage in an entirely improper evaluation of [Appellant's] emotional condition and character without any factual basis with which to do so." Brief for Appellant at 13.

In **Commonwealth v. Hernandez**, 590 A.2d 325, 331 (Pa. Super. 1991), this Court held that a prosecutor's comments about the defendant's "impassive demeanor throughout the trial" did not constitute reversible error, and stated that an "appellant's demeanor as observed by the jury is a proper consideration." **Hernandez**, 590 A.2d at 331. Further, this Court held that "the remarks were not prejudicial but merely were arguments based on the evidence." **Id.**

In the instant case, the trial court suggested that any error would be cured by the instruction to the jurors to use their common sense in evaluating the facts. **See** N.T., 10/7/2013, at 136. While counsel for Suero

did not consider this instruction to be fully adequate, he did not request any further or additional instruction on the matter. ***Id.*** Counsel for Appellant remained silent except to indicate that he had no objection to the proposed curative instructions. ***Id.*** at 146-49. Furthermore, no attorney commented when the trial court asked for "any objections, corrections, [or] additions" to the jury instructions. ***Id.*** at 208. While the Commonwealth's comment about Appellant's demeanor while listening to the 911 call may not have been entirely appropriate, the comment did not infringe upon Appellant's rights to silence and to be free from self-incrimination.[6] As the trial court noted, the jurors were free to observe Appellant and to formulate their own judgments, and were instructed to use their common sense in doing so. ***See Hernandez***, 590 A.2d at 331. Consequently, the Commonwealth's comment about Appellant's demeanor was not so prejudicial as to deprive Appellant of a fair trial.

Having reviewed each of Appellant's allegations of prosecutorial misconduct, we conclude that any misconduct on the part of the assistant district attorney was not of sufficient significance to result in the denial of Appellant's right to a fair trial. ***See Spotz***, 47 A.3d at 97. Therefore, even if Appellant had not waived the issue by withdrawing the motion for a mistrial, her first issue would not merit relief.

_____

[6] ***See*** U.S. Const. amend. V; Pa. Const. art. I, § 9.

In her second issue, Appellant argues that the trial court erred in admitting evidence of her involvement in the scheme to purchase a large quantity of marijuana in Colorado. Brief for Appellant at 14. Appellant asserts that the prejudicial effect of this evidence outweighed any probative value.[7] *Id.* We disagree.

The admission of evidence of prior criminal acts is governed by Rule 404(b) of the Pennsylvania Rules of Evidence, which provides, in pertinent part:

> **(b)  Crimes, Wrongs or Other Acts.**
>
> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

_____

[7] Appellant also asserts that the evidence of the marijuana distribution plot was irrelevant, but does not develop the argument in any substantive fashion. Brief for Appellant at 14. The argument portion of an appellate brief must include a discussion and citation of pertinent legal authorities. Pa.R.A.P. 2119(a). Appellant has failed to do so. Consequently, this issue is waived. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 371-72 (Pa. Super. 2008) (*en banc*) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived.").

"The admission of evidence of prior bad acts is solely within the discretion of the trial court, and the court's decision will not be disturbed absent an abuse of discretion." **Commonwealth v. Patterson**, 91 A.3d 55, 68 (Pa. 2014) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record." **Commonwealth v. Melvin**, 103 A.3d 1, 35 (Pa. Super. 2014) (citation omitted).

Here, the trial court permitted the Commonwealth to introduce evidence of the criminal plot for the purpose of proving the defendants' motive to commit the robbery, an enumerated exception to the rule prohibiting evidence of prior criminal acts. **See** Pa.R.E. 404(b)(2). The Commonwealth hypothesized that Appellant and her co-defendant, Suero, required a large sum of money to complete the purchase and transportation of the marijuana, and that they intended to acquire the funds, in part, by robbing Ms. Smith.

Appellant filed a motion *in limine* seeking exclusion of evidence of the plot, which the trial court denied. The trial court determined that the probative value and the need for the evidence was considerable, because it tended to establish a motive for the robbery of Appellant's grandmother, "an act which, absent a motive, would likely seem incredible." P.S.O., 3/24/2014, at 8. To further mitigate any prejudice, the trial court gave a

contemporaneous instruction to the jury to consider the evidence only to establish motive. N.T., 10/1/2013, at 138. The court repeated this instruction during its concluding charge to the jury. N.T., 10/7/2013, at 167-68.

"[T]o be admissible . . ., evidence of a distinct crime, even if relevant to motive, must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." ***Commonwealth v. Hairston***, 84 A.3d 657, 670 (Pa. 2014) (internal quotation marks omitted). In ***Commonwealth v. Collins***, 70 A.3d 1245 (Pa. Super. 2013), the defendant was charged with murder, and the trial court admitted evidence of the defendant's participation in a drug distribution organization. Although this Court acknowledged that the evidence was prejudicial, we determined that it was sufficiently probative of the defendant's motive to outweigh its prejudicial effect, because it linked the defendant to the victim and suggested a motive for the killing. ***Id.*** at 1252. Similarly, in the instant case, the trial court determined that the evidence of the marijuana distribution plot was relevant to Appellant's motive, because it tended to establish that Appellant and Suero "were in need of a substantial sum of money for a large drug purchase, and that they sought to obtain that money by robbing [Appellant's] grandmother." P.S.O., 3/24/2014, at 7. The inference that the robbery "grew out of or was in any way caused by" the marijuana distribution plot was, therefore, a reasonable one.

We discern no abuse of discretion. The trial court considered the appropriate factors in making its evidentiary ruling, provided reasonable explanations for its assessment of the probative value and prejudicial effect of the evidence, and gave cautionary instructions to the jury. Therefore, Appellant's second issue does not merit relief.

Accordingly, upon review of the certified record, the facts of the case, and the applicable principles of law, we find no basis to grant relief upon either of Appellant's claims.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2015