J-S24004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY JACKSON | |
| Appellant | No. 404 EDA 2014 |

Appeal from the PCRA Order December 16, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014203-2007;
CP-51-CR-0014205-2007; CP-51-CR-0014206-2007

BEFORE: GANTMAN, P.J., ALLEN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 24, 2015**

Appellant, Anthony Jackson, appeals from the order entered in the Philadelphia County Court of Common Pleas, denying his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The relevant facts and procedural history of this appeal are as follows.

> On the night of September 10, 2007, [Wilson F.], an Operations Specialist in the United States Coast Guard, was standing on the steps outside his house at 1848 Sulis Street in Philadelphia. Also outside were his housemate, [David P.], and his friend, [Kwame F.]. During this time, two men walked down 19th Street and stood on the corner near [Wilson F.'s] house. Moments later, a burgundy Dodge Neon turned on Sulis Street from 19th Street and stopped by the two men. A passenger offered the two men a ride to a party, which they declined, saying they

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

would meet them there. A few minutes later, the Neon drove away leaving the two men on the corner. Right after that, [David P.] went inside, but [Wilson F.] and [Kwame F.] remained outside.

Moments later, [Kwame F.] saw two men in black, one wearing a mask, ducking and coming up the sidewalk toward the two men. This prompted [Kwame F.] to say that it looked like there was about to be a shootout. Then, for no apparent reason, one of the two men on the corner pulled a gun from under his shirt, pointed it at [Kwame F.], and said "yeah you." That prompted [Wilson F.] to grab [Kwame F.'s] shoulder and tell him to run. [Kwame F.] ran inside the house safely, but before [Wilson F.] could get inside, the man with the gun shot [Wilson F.] in his right thigh and right foot. [Wilson F.] yelled out that he was hit and ran into the house and up the stairs until he reached [David P.'s] bedroom, where he bled profusely while [Kwame F.] tried to apply first aid and [David P.] called 9-1-1. Medical personnel arrived about ten to fifteen minutes later and took [Wilson F.] to Einstein Hospital.

About ten minutes after [Wilson F.] was taken to the hospital, police took [Kwame F.] and [David P.] about a block away to where moments earlier, Officer [Jason] Reid had stopped a burgundy Dodge Neon after receiving flash information that four males inside a vehicle matching that description might have knowledge of the shooting. Removed from the car were [Timothy J.], [Russell L.], [Jerrel M.], and [Appellant], who was very anxious and sweated heavily when Officer Reid spoke with him. [Kwame F.] was able to positively identify both the car and its driver and front seat passenger as being outside the house just before the shooting. [Appellant] and the three others were then taken to a police station, but were released later that day.

On September 11, 2007, [Wilson F.] gave a description of the shooter to Detective [Stephen] Grace at Einstein Hospital after he woke up from surgery. Based on the description given by [Wilson F.], Detective Grace prepared two photo arrays, one of which included [Appellant's] photograph. On September 12, 2007, Detective Grace

returned to Einstein to show the arrays to [Wilson F.]. When [Wilson F.] viewed the first array, which included [Appellant's] image and seven others with similar facial features, he immediately recognized [Appellant], stating: "That's the person that shot me." On the second array, [Wilson F.] was less certain, but identified codefendant [Rasheed B.] as the second male on the corner who was with the shooter. [Wilson F.] circled the photos of [Appellant] and [Rasheed B.] and signed his name to both arrays. Arrest warrants were then obtained for [Appellant] and [Rasheed B.].

[Appellant] surrendered on October 9, 2007, and gave a statement to Detective Grace in which he said that he was at a birthday party with [Timothy J.] at the time the shooting occurred. At trial, [Timothy J.] testified that [Appellant] was at his birthday party at the time the shooting occurred, but that they left at about midnight in order to take [Russell L.] home because he was intoxicated. [Appellant] also called [Clifton G.] who testified that [Appellant] had a reputation for being nonviolent and [another witness] who testified that [Appellant] had a reputation for being mild-mannered and respectful.

The bullet that struck [Wilson F.'s] leg hit an artery and his wounds required four surgeries and over five weeks of hospitalization. At the time of trial, [Wilson F.] was still taking medication for pain and neurological damage, was still in physical therapy, and had lingering muscle and nerve damage that caused his leg to buckle when he walked.

*Commonwealth v. Jackson*, No. 152 EDA 2010, unpublished memorandum at 1-3 (Pa.Super. filed January 19, 2011) (quoting Trial Court Opinion, filed May 10, 2010, at 2-4).

Following trial, a jury convicted Appellant of two (2) counts each of aggravated assault and criminal conspiracy, and one (1) count each of attempted murder, carrying a firearm without a license, possessing an

instrument of crime, and recklessly endangering another person. On October 31, 2008, the court sentenced Appellant to an aggregate term of fifteen (15) to thirty (30) years' imprisonment. This Court affirmed the judgment of sentence on January 19, 2011, and our Supreme Court denied Appellant's petition for allowance of appeal on August 30, 2011.

On August 9, 2012, Appellant timely filed a *pro se* PCRA petition. In it, Appellant raised multiple claims of ineffective assistance of trial and direct appeal counsel. The court appointed PCRA counsel, who filed a motion to withdraw representation and "no-merit" letter, pursuant to **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). On October 31, 2013, the court issued notice of its intent to dismiss the petition without a hearing, pursuant to Pa.R.Crim.P. 907.[2] The court denied PCRA relief on December 16, 2013. That same day, the court permitted PCRA counsel to withdraw. On January 10, 2014, Appellant timely filed a *pro se* notice of appeal and

---

[2] The PCRA court notes Appellant "mailed the [c]ourt" a *pro se* response to the Rule 907 notice, which the court received on November 25, 2013. (PCRA Court Opinion, filed April 7, 2014, at 2). Significantly, Appellant's *pro se* response to the Rule 907 notice does not appear in the certified record, and the criminal docket entries do not list the *pro se* filing. Thus, it appears Appellant did not properly file the *pro se* response to the Rule 907 notice. **See Commonwealth v. Crawford**, 17 A.3d 1279, 1282 (Pa.Super. 2011) (stating "simply depositing a motion in a judge's chambers is not filing," and "the document must at least be addressed to a proper filing office within the Unified Judicial System in order to complete the filing").

concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

Appellant raises three issues for our review:

WHETHER PCRA COUNSEL [ERRED] BY FILING A "NO-MERIT" LETTER, WHERE COUNSEL FAILED TO PROPERLY REVIEW THE RECORD AND [APPELLANT'S] CLAIMS WERE MERITORIOUS.

WHETHER [THE] PCRA COURT [ERRED] BY ACCEPTING COUNSEL'S "NO-MERIT" LETTER, WHERE COUNSEL'S FINDINGS WERE NOT SUPPORTED BY THE RECORD.

WHETHER [THE] PCRA COURT [ERRED] BY NOT HAVING AN EVIDENTIARY HEARING WHEN THERE WAS A GENUINE ISSUE OF MATERIAL FACT PRESENT THAT NEEDED TO BE RESOLVED.

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190 (Pa.Super. 2012). Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if

there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. **Commonwealth v. Wah**, 42 A.3d 335 (Pa.Super. 2012).

On appeal, Appellant contends PCRA counsel did not conduct a proper review of the issues raised in the *pro se* PCRA petition. Appellant insists PCRA counsel incorrectly interpreted some of the issues raised in the *pro se* PCRA petition, and the legal conclusions in the "no-merit" letter are unsupported by the record. Moreover, Appellant posits, "The record of this matter supports a finding that the court failed to conduct an independent review of the record before accepting counsel's 'no-merit' letter." (Appellant's Brief at 45). Appellant concludes the PCRA court erroneously accepted the "no-merit" letter, and the court should not have permitted PCRA counsel to withdraw. Appellant further concludes that genuine issues of material fact still exist, and the PCRA court should have conducted an evidentiary hearing. We disagree.

"Before an attorney can be permitted to withdraw from representing a petitioner **under the PCRA**, Pennsylvania law requires counsel to file and obtain approval of a 'no-merit' letter pursuant to the mandates of **Turner/Finley**." **Commonwealth v. Karanicolas**, 836 A.2d 940, 947 (Pa.Super. 2003) (emphasis in original).

> [C]ounsel must…submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed,

explaining why and how those issues lack merit, and requesting permission to withdraw.

***Commonwealth v. Wrecks***, 931 A.2d 717, 721 (Pa.Super. 2007). Counsel must also send to the petitioner a copy of the "no-merit" letter or brief and petition to withdraw and advise the petitioner of his right to proceed *pro se* or with private counsel. ***Id.*** "Substantial compliance with these requirements will satisfy the criteria." ***Karanicolas, supra***. Additionally, the PCRA court "must conduct its own independent evaluation of the record and agree with counsel that the petition is without merit…." ***Commonwealth v. Reed***, 107 A.3d 137, 140 (Pa.Super. 2014).

Instantly, counsel filed a ***Turner/Finley*** letter and motion to withdraw as counsel with the PCRA court. Counsel listed the issues Appellant wished to raise and explained why the issues merit no relief.[3] Counsel indicated that he sent Appellant a copy of the "no-merit" letter and motion to withdraw, as well as an explanation of Appellant's right to proceed *pro se* or with private counsel. Thus, counsel substantially complied with the ***Turner/Finley*** requirements. ***See Wrecks, supra***. Moreover, the PCRA court conducted an independent review of the record and agreed with counsel that the issues raised in Appellant's *pro se* PCRA petition were

_____

[3] Contrary to Appellant's assertions, the record reveals that PCRA counsel correctly interpreted all of the issues raised in the *pro se* PCRA petition and provided support for his conclusion that the issues lacked merit.

meritless. **See Reed, supra**. Thus, the PCRA court did not err in permitting counsel to withdraw.

In addition to attacking the court's decision to allow PCRA counsel to withdraw, Appellant asserts that PCRA counsel was ineffective on multiple bases. Appellant, however, failed to raise these claims in a properly filed response to the PCRA court's Rule 907 notice.[4] Consequently, Appellant's claims regarding PCRA counsel's purported ineffectiveness are waived. **See Ford, supra** (holding claims of PCRA counsel's ineffectiveness cannot be raised for first time after notice of appeal has been filed from underlying PCRA matter). Although Appellant's brief includes argument regarding trial and direct appeal counsels' ineffectiveness, Appellant presents such argument in an attempt to demonstrate PCRA counsel's ineffectiveness in conjunction with the preparation of the "no-merit" letter. Appellant's *pro se* Rule 1925(b) statement also framed his issues in terms of PCRA counsel's ineffectiveness, rather than raising independent claims of trial and direct appeal counsels' ineffectiveness. **See** *Pro Se* Rule 1925(b) Statement, filed

---

[4] Appellant insists "[a] proper reading of Appellant's objections to the court's [Rule 907] notice reveals that Appellant sought to preserve claims of PCRA counsel's ineffectiveness regarding all of the claims presented…." (Appellant's Brief at 15). We emphasize, however, Appellant's *pro se* response to the Rule 907 notice does not appear in the certified record, and this Court cannot consider any item that is not part of the certified record. **See Commonwealth v. Houck**, 102 A.3d 443 (Pa.Super. 2014) (reiterating appellate court may consider only those materials included in certified record, when resolving issues).

1/10/14, at 1-2.  Thus, we do not undertake any further review of trial and direct appeal counsels' purported ineffectiveness.  Based upon the foregoing, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/24/2015